9

Filing # 230997758 E-Filed 09/06/2025 12:55:39 PM

Unique Code : CAA-FAA-BCABB-JBDAGGFA-BDFGFEG-D Page 1 of 18

**IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT IN AND FOR BROWARD COUNTY, FLORIDA CIVIL DIVISION CIVIL DIVISION**

**SCOTT SCHAAF and YEIDY MONTERO,**

Plaintiffs, **CASE NO.: CACE25007386 (DIV 02)**

v.

**NEXO CAPITAL INC., and ANTONI TRENCHEV,**

Defendants.
______________________________________/

## AMENDED COMPLAINT

COMES NOW, Plaintiffs, Scott Schaaf and Yeidy Montero ("Plaintiffs") who allege the following against Defendants: Nexo Capital, Inc. and Antoni Trenchev (Collectively "Nexo" or "Defendants") based on personal knowledge, the investigation of counsel, and information and belief. Plaintiffs believe that reasonable discovery will identify additional evidence for the allegations set forth herein.

## INTRODUCTION

1. Plaintiffs bring their action against international crypto-lender Nexo to seek redress for the harm resulting from Nexo's fraudulent inducement to take out loans collateralized by significant digital assets, which were ultimately sold ("liquidated") by Nexo. Both Plaintiffs have standing, and their claims arise out of the same transaction or occurrence.

2. To induce Plaintiffs to borrow against their deposited digital assets and invest in its own complex financial products rather than just earn interest on their own digital assets, Nexo made false promises to Plaintiffs regarding its services to "VIP" customers, which Plaintiffs relied upon in deciding to borrow against, and thus put at risk of liquidation, their substantial digital asset



*** FILED: BROWARD COUNTY, FL BRENDA D. FORMAN, CLERK 09/06/2025 12:55:39 PM.****

I HEREBY ATTEST THAT THIS CERTIFIED DOCUMENT IS A TRUE AND CORRECT COPY AS SAME APPEARS ON RECORD WITH BROWARD COUNTY CLERK OF COURTS.

Digitally signed by Brenda D Forman
Date: 2025.12.09 13:45:25 -05:00
Reason: Electronic Certified Copy

Unique Code : CAA-FAA-BCABB-JBDAGGFA-BDFGFEG-D Page 2 of 18

holdings. Plaintiffs ultimately suffered over $1,000,000.00+ in losses because of those misrepresentations and when Nexo liquidated their digital assets.

3. Further, finance lenders such as Nexo must be licensed to make loans under Florida law. On information and belief, Nexo made these loans to Plaintiffs while it was unlicensed, in violation of Florida law. Nexo also entered into unlawful agreement with the Plaintiffs that violated Florida law.

4. On January 19, 2023, Nexo consented to the entry of a Cease-and-Desist Order by the U.S. Securities and Exchange Commission ("SEC"). The SEC concluded that Nexo had made unregistered securities offerings in the form of Earn Account Securities through which Nexo customers earn interest on their deposited digital assets, in violation of the Securities Act of 1933 ("Securities Act"), and ordered Nexo to cease and desist from offering such accounts.

5. In addition, Nexo operated without proper licensing in Florida, in violation of state law.

6. On January 19, 2023, Nexo consented to a Cease-and-Desist Order by the U.S. Securities and Exchange Commission regarding unregistered securities offerings through its Earn Account Securities. Nexo then had to pay the SEC over $40,000,000.00+ in penalties.

## PARTIES

7. Plaintiffs Scott Schaaf and Yeidy Montero are residents of Broward County, Florida.

8. Defendant Nexo Capital Inc. ("Nexo Capital") is a Cayman Islands corporation, with the address Two Artillery, 161 Shedden Road, 2nd Floor, George Town, P.O. Box 799, Grand Cayman KY KY1-1103, that has its principal place of business and headquarters in London,

Unique Code : CAA-FAA-BCABB-JBDAGGFA-BDFGFEG-D Page 3 of 18

England. Nexo Capital operates Nexo's website. On information and belief, Nexo Capital is the Nexo entity that issued credit to Plaintiffs.

9. Defendant, Antoni Trenchev, is an individual, co-founder, equity holder, and managing partner of Nexo. He is a resident of the United Kingdom. He exercised substantial control over Nexo's operations, personally made public statements regarding the safety and security of Nexo's products, and directly benefitted from the wrongful conduct described herein.

10. Nexo Capital and Antoni Trenchev, collectively operate and maintain the Nexo website and offer the Nexo services advertised on that website and through the Nexo whitepaper, are subject to single-enterprise liability.

11. Nexo co-founder Trenchev further underscored the single-enterprise character of the Nexo corporate entities in an interview with Bloomberg on February 6, 2021, responding to a question concerning who "regulates" Nexo: "We are a global enterprise. We are regulated as a financial institution in Estonia, we have various consumer lending licenses in the US, we are pending authorization by the FCA in London. So, it really depends on the jurisdiction and where you are based. In Switzerland we are part of a self-regulatory organization, so its quite an endeavor on that front, but the team is great and we have had quite some successes."

12. Inequitable results would follow if the misconduct and acts in question in their action were treated as those of any one corporate entity alone. For example:

a. If these entities were to claim distinctly to oversee and operate different aspects of the Nexo Crypto Credit, VIP, and OTC services made available to Plaintiffs on the Nexo website, Plaintiffs may have to bring different suits in different jurisdictions to establish liability.

Unique Code : CAA-FAA-BCABB-JBDAGGFA-BDFGFEG-D Page 4 of 18

b. If Nexo's actions were treated as only the actions of certain Nexo entities, then Plaintiffs may be forced to litigate their claims in Estonia or the United Kingdom which would be inequitable given the substantial presence and activities of Nexo in the United States and Nexo's direct solicitation of Plaintiffs' investments.

13. This result would be particularly unfair as Nexo advertises itself as a single entity. A Nexo blog post from November 2022, which states that it "would like to shed some light on Nexo's business model and how it might differ from that of others," states that Nexo's "core services complement each other and make the enterprise profitable."

14. Nexo identifies these core services as "Crypto-backed loans, margin lending and institutional OTC loans made on a collateralized basis, Earn interest products and staking, [and] Trading services (spot, futures, options, otc, etc.)." This post does not make any effort to differentiate between the various Nexo entities and Nexo's product offerings. Rather, Nexo highlights the interconnected nature of its borrowing, trading, and earn products.

**FACTUAL ALLEGATIONS**

15. Since April 2018, Nexo has maintained and operated a website through which customers can use their digital assets as collateral, held in their "Credit Line Wallet," to borrow fiat currency, such as US Dollars. Beginning in October 2020, Nexo also offered customers interest-bearing accounts paying interest rates as high as 16% on deposited digital assets through a "Savings Wallet," which also serves as back up collateral. Nexo describes itself as "the world's largest and most trusted crypto lender."

16. A customer can borrow as much cash as they want from Nexo as long as they maintain a particular LTV ratio—*i.e.* the ratio between the amount of cash borrowed and the value

Unique Code : CAA-FAA-BCABB-JBDAGGFA-BDFGFEG-D Page 5 of 18

of the collateral held in the customer's Credit Line Wallet. The value of that collateral fluctuates with the price of the digital assets held as collateral.

17. Accordingly, a customer sometimes must stake more digital assets or pay back on its loan to maintain the requisite LTV ratio. If a customer's LTV ratio rises above a certain threshold, to bring the LTV ratio back in line Nexo will (1) transfer assets from the Savings Wallet to the Credit Line Wallet and/or (2) automatically sell ("liquidate") the collateral. These sales may result in the liquidation of all a customer's digital assets held in the Credit Line Wallet and Savings Wallet.

18. Nexo also allows customers to use that borrowed fiat currency to purchase additional digital assets, which in turn provide additional collateral for the loan. Through this mechanism, Nexo is in actuality selling customers a complex leveraged long on their basket of digital assets.

19. Leveraged trading, which is also known as margin trading, allows customers to use borrowed capital to make trades and thus provides them with additional exposure to the digital assets comprising their position. For example, a customer trading with 10x leverage could take on a $10,000 position using only $1,000 as collateral. Leveraged trading is extremely high risk, particularly in the volatile crypto market. The higher the leverage, the higher the risks of getting liquidated.

20. Plaintiffs had accumulated, and lost, Bitcoin ("BTC"), Nexo Coin, and Ethereum ("ETH"), specifically:

a. Plaintiff, Scott Schaaf, had around 4.36269244 BTC, worth about $488,621.55 as of the date of this filing.

Unique Code : CAA-FAA-BCABB-JBDAGGFA-BDFGFEG-D Page 6 of 18

b. Plaintiff, Yeidy Montero, had around 6.5039522 BTC, worth about $728,442.65 as of the date of this filing

c. Plaintiff, Scott Schaaf, had around 107,357.16 Nexo coins worth about $136,343.49 as of the date of this filing.

d. Plaintiff, Yeidy Montero, had around 95,054.80 Nexo coin worth about $120,719.60 as of the date of this filing.

e. Plaintiff, Scott Schaaf, had around 0.52 in ETH, worth about $2,313.74.

f. Plaintiff, Yeidy Montero, had around 28.97 in ETH, worth about $128,902.00

**g. The total amount of cryptocurrencies in USD was about $1,605,340.00.**

21. Plaintiffs transacted with Nexo these amounts of cryptocurrency which were all eventually lost due to Defendants' actions.

22. On April 20, 2020, a representative named Nick, (last name not provided), offered a special program that required "confidentiality and discretion at all times" in order to "recover as much from your loss as possible." Plaintiffs interpreted this as a special program that Nexo was offering to correct a mistake on Nexo's part and make Plaintiffs' investment whole.

23. Plaintiffs were unsure of the offer at that time due to lack of knowledge around crypto investing.

24. Again, on March 4, 2021, Nexo employee Octavian Dinca ("Octavian") contacted Plaintiffs and stated that Plaintiffs' account had grown to the point that he was eligible for Nexo's "VIP Relationship Program." Octavian also informed Plaintiffs that he would be Plaintiffs' "dedicated relationship manager."

25. On March 8, 2021, Plaintiffs alleviated themselves of previous concerns and accepted the offer to purchase more crypto and partake in the "VIP program" on the information

Unique Code : CAA-FAA-BCABB-JBDAGGFA-BDFGFEG-D Page 7 of 18

and belief that this was a safe investment based on Nexo's co-founder Antoni Trenchev's statement on Bloomberg television that advertised, "***none of us as a company nor our clients lost any money.***" Plaintiffs understood this statement as their account never actually lost money and was safe to further invest with the protection promised by Nexo.

26. Plaintiffs were less skeptical of prior emails believing Nexo was sincere in attempting to restore their lost investment.

27. However, Nexo's VIP Program brochure, and Nexo's communication to Plaintiffs regarding that program, contained multiple false and misleading representations and omissions that, in violation of Florida law, fraudulently induced Plaintiffs.

28. The Nexo VIP Program was an unlawful scheme to steer customers with large accounts, like Plaintiffs, into loans and programs that were lucrative to Nexo but detrimental to Plaintiffs.

29. As time continued, Nexo proceeded to liquidate the remaining portion of Plaintiffs' digital assets without Plaintiffs' consent due to the fraudulent "VIP Program."

30. Almost immediately following the liquidation of all of Plaintiffs' digital assets, the market began to recover.

31. Now, Bitcoin, Ethereum, and Nexo coin, have reached new all-time highs.

## COUNT I

## DECLARATORY JUDGMENT PURSUANT TO FLORIDA CHAPTER § 86

32. The Plaintiffs reallege and incorporate paragraphs 1 through 33 as is fully set forth herein and further allege that:

33. This is an action for Declaratory Relief pursuant to Florida Chapter § 86.

Unique Code : CAA-FAA-BCABB-JBDAGGFA-BDFGFEG-D Page 8 of 18

34. The Plaintiffs entered into Investment/Loan Program agreements (the "Agreements") with the Defendants.

35. The Plaintiffs seeks a declaration of rights under those Agreements.

36. Specifically, the Plaintiffs seeks a declaration that the Agreements are void and unenforceable because of illegality and that such agreements are against public policy and void or otherwise voidable.

37. At all material times in which the Defendants offered or otherwise enticed the Plaintiffs into entering into the Investment/Loan Program Agreements, the Defendants were not operating lawfully at the time of making the Loans.

38. Up until February 19, 2022, the Plaintiffs were led to believe, based on the Defendants' misrepresentations, that the Defendants were operating lawfully and held all necessary licenses and registrations.

39. The actions of the Defendants violated Florida statutes:

a. Florida Consumer Finance Act (Fla. Stat. Ch. 516) requires a license to make consumer loans of $25,000 or less. Nexo extended loans without a license, thus the contracts are void and unenforceable. Fla. Stat. § 516.02 makes it unlawful to engage in the business of making consumer loans without a license. Fla. Stat. § 516.31 provides civil consequences for Nexo's actions to which Plaintiffs plead.

b. Under Florida Securities and Investor Protection Act (Fla. Stat. Ch. 517) Civil liability attaches under Fla. Stat. § 517.211. Nexo's "Earn Interest Product" and VIP loan programs was a security. Plaintiffs hereby rescind transactions and plead to recover their damages.

Unique Code : CAA-FAA-BCABB-JBDAGGFA-BDFGFEG-D Page 9 of 18

40. Any Agreements that comprised the Investment/Loan Program between the Plaintiffs and the Defendants were illegal as against public policy and void.

41. There is a bona fide dispute between the Plaintiffs and the Defendants.

42. The Plaintiffs have a justiciable question as to the enforceability of the Agreements and the existence or non-existence of their rights under the Agreements.

43. The Plaintiffs believe that they are entitled to a declaratory judgment declaring the Agreements between the Plaintiffs and the Defendants void as violative of public policy and to be returned to their status prior to the entry into the agreements.

44. The Plaintiffs are in doubt as to their rights.

45. As such, there is a bona fide, actual and present need for the requested declaration.

WHEREFORE, the Plaintiffs seek a declaration from this Court that the Agreements are void and unenforceable.

**COUNT II**

**FRAUDULENT MISREPRESENTATION IN THE INDUCEMNT OF CONTRACT**

46. Plaintiffs realleges and incorporates paragraphs 1 through 33 as is fully set forth herein, and further alleges that:

47. The Defendants made false statements regarding material facts relating to the Loan.

48. The Defendants knew, or should have known, that the Misrepresentations were false and misleading at the time they solicited Plaintiffs' participation in the Earned Interest Program.

49. The Defendants knew, or should have known, that the Misrepresentations were false and misleading at the time they solicited Plaintiffs' participation in the Loan Program.

Unique Code : CAA-FAA-BCABB-JBDAGGFA-BDFGFEG-D Page 10 of 18

50. The Misrepresentations of the Defendants were material.

51. The Misrepresentations of the Defendants were false, and the Defendants knew or should have known of their falsity.

52. The Defendants made the Misrepresentations to Plaintiffs with the intent to induce reliance by Plaintiffs to take the Loan using the Investment/Loan Program so that the Defendants could reap substantial, unjustified fees and other benefits.

53. Plaintiffs justifiably relied upon the Misrepresentations made by the Defendants when soliciting and issuing the Loan and Plaintiffs entering into the Investment/Loan Program and "Nexo Loyalty Program".

54. Plaintiffs have been damaged by the Defendants' negligent misrepresentations in the inducement in an amount within the jurisdictional limits of this Honorable Court.

55. Plaintiffs have no adequate remedy at law.

56. In addition to monetary damages, as a remedy for the Defendants' negligent misrepresentations in the inducement, Plaintiffs seeks rescission of the agreements with the Defendants, including the "Earn Interest Program", the Loan Program and other agreements comprising the Investment/Loan Program, and to be placed into her position she held at the time of the actions of the Defendants and her entering into the Investment/Loan Program.

WHEREFORE, Plaintiffs demands rescission of the Loan and judgment against the Defendants.

**COUNT III**

**FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT (FDUPTA)**

57. The Plaintiffs realleges and incorporate paragraphs 1 through 33 as if fully set forth herein, and further allege that:

Unique Code : CAA-FAA-BCABB-JBDAGGFA-BDFGFEG-D Page 11 of 18

58. This is an action against the Defendants for violations of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), Section 501.204 of the Florida Statutes.

59. Plaintiffs are a consumer as defined in FDUTPA.

60. Defendants have engaged in trade or commerce as defined in FDUTPA.

61. FDUTPA, Section 501.204(1) of the Florida Statutes, declares unconscionable, unfair and deceptive acts or practices in the conduct of any trade or commerce to be unlawful.

62. The Defendants have engaged in a pattern of acts and practices designed to deceive and induce Florida consumers to take loans like the Loans taken by the Plaintiffs, leading these borrowers to believe that loans like the Loans would effectively be interest-free based on participation in the Defendants' Loan Program which the Defendants represented was lawful and that they held all necessary licenses and registrations for and risk-free so long as borrowers like the Plaintiffs stayed current on the Loan and "topped off" the account if the loan to value ever approached the loan to value Threshold.

63. In fact, it was not true that the Defendants' Loan Program would cover the interest of loans like the Loans, and it was not true that borrowers like the Plaintiffs would be able to access their accounts to "top them off" subsequent to receiving notice that loans like the Loan were approaching the loan to value threshold.

64. Further, it was not true that borrowers like the Plaintiffs would be able to utilize the Loan Program to offset the interest on loans like the Loans, as the Defendants ceased the ability of borrowers similarly situated to the Plaintiffs to use their Loan Program in February of 2022; and at their point, the Defendants continued to collect interest on the Plaintiffs' Loan while ceasing to compensate the Plaintiffs for custodial use of the assets in the Plaintiffs' Wallets pursuant to the promises associated with the Loan Program which induced the Plaintiffs' Loans.

Unique Code : CAA-FAA-BCABB-JBDAGGFA-BDFGFEG-D Page 12 of 18

65. Through false and deceptive business practices, the Defendants have (1) committed acts or practices in trade or commerce, which shock the conscience; (2) engaged in representations, acts, practices or omissions, which are material, and which are likely to mislead consumers acting reasonably under the circumstances; (3) committed acts or practices in trade or commerce which offend established public policy and are unethical, oppressive, unscrupulous or substantially injurious to consumers; and/or (4) engaged in acts or practices that are likely to cause substantial injury to consumers, which is not reasonably avoidable by consumers themselves or outweighed by countervailing benefits to consumers or competition.

66. Thus, the Defendants have engaged in unfair or deceptive acts or practices in the conduct of any trade or commerce in violation of Section 501.204(1), Florida Statutes.

67. The Defendants have willfully engaged in the acts and practices when they knew or should have known that such acts and practices were unfair or deceptive or otherwise prohibited by law.

68. The Plaintiffs have been damaged by the Defendants' violations of FDUTPA in an amount within the jurisdictional limits of this Court.

69. The Plaintiffs have retained undersigned counsel and have agreed to pay undersigned counsel a reasonable fee for their services.

70. The Plaintiffs demands attorney's fees and costs.

**COUNT IV**
**BREACH OF FIDUCIARY DUTY**

71. Plaintiffs realleges and incorporates paragraphs 1–33.

72. Defendants, including Trenchev, solicited Plaintiffs' trust by offering "VIP" services and exercising control over Plaintiffs' assets.

Unique Code : CAA-FAA-BCABB-JBDAGGFA-BDFGFEG-D Page 13 of 18

73. A fiduciary relationship arose by virtue of Defendants' superior knowledge, control over Plaintiffs' digital assets, and representations of loyalty and protection.

74. Defendants breached their fiduciary duties by:

a. Misrepresenting the safety of Plaintiffs' assets;

b. Liquidating assets for their own benefit; and

c. Failing to disclose material risks.

75. Plaintiffs suffered damages as a direct and proximate result.

**WHEREFORE**, Plaintiffs demands judgment for damages against Defendants for Breach of their Fiduciary Duty to Plaintiffs.

## COUNT V
## NEGLIGENCE

78. Plaintiffs realleges and incorporates paragraphs 1–33.

79. Defendants owed Plaintiffs a duty of reasonable care in handling their digital assets and providing truthful information.

80. Defendants breached that duty by mismanaging collateral, failing to exercise due care, and issuing false assurances.

81. Plaintiffs suffered damages as a result and now seek to recover any and all damages from the Defendants due to their breach of duty of care.

**WHEREFORE**, Plaintiffs demands judgment for damages against Defendants.

## COUNT VI
## CONVERSION OF PROPERTY

82. Plaintiffs realleges and incorporates paragraphs 1–33.

Unique Code : CAA-FAA-BCABB-JBDAGGFA-BDFGFEG-D Page 14 of 18

83. Plaintiffs had ownership and possessory rights in their digital assets deposited with Defendants.

84. Defendants, including Trenchev, wrongfully exercised dominion and control over Plaintiffs' assets by liquidating and transferring them without Plaintiffs' consent.

85. This constituted conversion.

**WHEREFORE**, Plaintiffs demands damages against Defendants, jointly and severally, ***including treble damages where permitted***.

**COUNT VII**
**UNJUST ENRICHMENT**

86. Plaintiffs realleges and incorporates paragraphs 1–33.

87. Defendants received over $1,600,000.00 worth of cryptocurrency from Plaintiffs.

88. The $1,600,000.00 worth of cryptocurrency was not given to Defendants as a gift.

89. Defendant's liquidated Plaintiff's BTC without explanation.

90. Therefore, Defendants were unjustly enriched through the liquidation of Plaintiffs' assets and retention of interest, fees, and profits derived therefrom.

91. Equity and good conscience require restitution to Plaintiffs.

**WHEREFORE**, Plaintiffs demands restitution and damages against Defendants.

**COUNT VIII**
**CIVIL RICO (Fla. Stat. §§ 772.101–.104)**

Plaintiffs reallege and incorporate paragraphs 1 through 33 as if fully set forth herein, and further allege:

92. This is an action under Florida's Civil Remedies for Criminal Practices Act ("Florida RICO Act"), Fla. Stat. §§ 772.101–.104.

Unique Code : CAA-FAA-BCABB-JBDAGGFA-BDFGFEG-D Page 15 of 18

93. Defendants, **Nexo Capital Inc.** and **Antoni Trenchev** are "persons" within the meaning of Fla. Stat. § 772.102(1).

94. At all relevant times, Defendants associated together and with related Nexo entities to form an **enterprise** within the meaning of Fla. Stat. § 772.102(3). The enterprise was engaged in, and its activities affected, trade and commerce in Florida and throughout the United States.

95. The enterprise consisted of Nexo Capital Inc., Antoni Trenchev, and other co-founders and executives of Nexo, who operated as a continuing unit with a common purpose: to solicit investments and loans from consumers, including Plaintiffs, through misrepresentations, unlawful lending practices, and the unauthorized appropriation of customer assets.

96. The enterprise engaged in a **pattern of criminal activity** within the meaning of Fla. Stat. § 772.102(4), which included but was not limited to:

a. **Theft** and **Scheme to Defraud** (Fla. Stat. §§ 812.014, 817.034) — by liquidating Plaintiffs' assets without consent and retaining the proceeds;
b. **Fraudulent Misrepresentations** — by falsely assuring Plaintiffs their assets were safe, insured, or risk-free, and that Plaintiffs would "never lose money";
c. **Unlicensed Consumer Lending** (Fla. Stat. § 516.02) — by extending loans to Plaintiffs without the licenses required under Florida law;
d. **Sale of Unregistered Securities** (Fla. Stat. § 517.07) — by offering "Earn Interest" accounts and investment programs without registration;
e. **Unjust Enrichment through Criminal Usury** (Fla. Stat. ch. 687) — by charging unlawful interest rates on crypto-backed loans;
f. **Money Laundering** (Fla. Stat. § 896.101) — by commingling customer assets

Unique Code : CAA-FAA-BCABB-JBDAGGFA-BDFGFEG-D Page 16 of 18

and transferring funds among Nexo's affiliated entities to conceal the origins of proceeds.

97. Defendants committed at least two of the above enumerated predicate acts within a five-year period, thereby establishing a pattern of criminal activity under Florida's RICO Act.

98. Defendants, through the enterprise, engaged in conduct constituting a violation of Fla. Stat. § 772.103 by:

a. Conducting or participating in the affairs of the enterprise through a pattern of criminal activity;

b. Acquiring or maintaining, directly or indirectly, interests in or control of the enterprise through a pattern of criminal activity; and

c. Conspiring to violate Fla. Stat. § 772.103(1)–(3).

99. Plaintiffs were **directly and proximately injured** in their business and property by reason of Defendants' violations of Fla. Stat. § 772.103. Plaintiffs' losses exceed **$1,600,000.00**, reflecting the fair market value of the cryptocurrency unlawfully liquidated and retained by Defendants.

100. Pursuant to Fla. Stat. § 772.104(1), Plaintiffs are entitled to **treble damages**, reasonable attorneys' fees, and costs of suit.

101. Defendants' ongoing misrepresentations and unlawful activities demonstrate that this conduct was not an isolated incident but part of a broader scheme targeting Florida residents and U.S. consumers in general.

**REQUEST FOR PUNITIVE DAMAGES**

102. Plaintiffs reallege and incorporate paragraphs 1–33 and all preceding counts.

Unique Code : CAA-FAA-BCABB-JBDAGGFA-BDFGFEG-D Page 17 of 18

103. Defendants' conduct, as described herein, was intentional, malicious, willful, wanton, and in reckless disregard of the rights of Plaintiffs.

104. Defendants deliberately misrepresented the safety and legality of their programs, induced Plaintiffs into unlawful agreements, and wrongfully liquidated Plaintiffs' assets for Defendants' own profit.

105. Defendants' actions were not mere negligence or oversight, but instead constituted a conscious disregard for Plaintiffs' rights and the laws of the State of Florida.

106. Punitive damages are warranted to punish Defendants for their egregious misconduct and to deter similar conduct in the future. Punitive damages are considered "punishment" damages. The purpose of punitive damages is to punish a wrongdoer for an intentional wrong done and to deter similar misconduct by the wrongdoer and others in the future. *Grove Isle Ass'n, Inc. v. Lindzon*, 350 So. 3d 826, 830 (Fla. 3d DCA 2022).

107. WHEREFORE, Plaintiffs demand punitive damages against Defendants, jointly and severally, in an amount to be determined at trial or at an evidentiary hearing, in addition to all other damages and relief sought herein.

## CONCLUSION AND PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiffs demands judgment against the Defendants for all the above causes of action, for damages in currency/crypto lost in the amount of **$1,605,340.00**, in addition to, treble damages, punitive damages, as well as reasonable attorney fees and costs. The Plaintiffs demands a trial by jury. The Plaintiffs reserves the right to amend this complaint.

Dated: September 6, 2025

*/s/ Christopher Hunt*
Christopher Hunt, Esq.
Florida Bar No. 1035597

Unique Code : CAA-FAA-BCABB-JBDAGGFA-BDFGFEG-D Page 18 of 18

Law Office of Christopher Hunt, PLLC
146 Second Street N., Suite 310
St. Petersburg, FL 33701
E-mail: christopher@chrishuntlegal.com
Phone: (727) 401-4665

and

/s/ Alexander D. Licznerski
Alexander D. Licznerski, Esq.
Florida Bar No. 12387
Licznerski Law, PLLC
PO Box 2606
Oldsmar, FL 34677
E-mail: alicznerski@licznerskilaw.com
Phone: (813)-406-0782

*Attorneys for Plaintiffs*