**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Fort Lauderdale Division**

**Case No: 0:25-cv-62575-WPD**

SCOTT SCHAAF and YEIDY MONTERO,

Plaintiffs,

vs.

NEXO CAPITAL INC. and ANTONI TRENCHEV,

Defendants.
_______________________________________/

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR REMAND (DKT. 40)**[1]

BAKER & MCKENZIE LLP
830 Brickell Plaza, Suite 3100
Miami, Florida 33131
Phone: (305) 789-8900
Fax: (305) 789-8953

By: */s/ Adrienne Harreveld*
Adrienne Harreveld, Esq.
Florida Bar No. 1035946
adrienne.harreveld@bakermckenzie.com

Ian S. Shelton, Esq.
(admitted *pro hac vice*)
Baker & McKenzie LLP
800 Capitol Street, Suite 2100
Houston, Texas 77002
Phone: (713) 427-5029
Fax: (713) 427-5099
ian.shelton@bakermckenzie.com

*Attorneys for Defendants Nexo Capital Inc. and Antoni Trenchev*

[1] By filing this Opposition, Defendant does not waive his personal jurisdiction defense, which he is raising in his contemporaneously filed motion to dismiss.

**INTRODUCTION**

The Court's prior order granting Defendant's motion to dismiss confirmed that the Court has federal question jurisdiction under 28 U.S.C. § 1331 over Plaintiffs' Third Amended Complaint ("3AC") because it dismissed with prejudice no fewer than *six* federal claims—four counts for violation of the Commodities Exchange Act ("CEA"), and two counts for violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Dkt. 36 at 20. Plaintiffs voluntarily decided to plead federal claims in this Court and litigate them on the merits. The Court had supplemental jurisdiction under 28 U.S.C. § 1367 over the state law claims for fraud, FDUTPA, and civil theft. There is no question the Court has jurisdiction.

Plaintiffs apparently learned nothing from the Court's order. After this Court dismissed every one of Plaintiffs' ten claims, they filed *another* shotgun pleading consisting of 75 pages and a whopping 408 paragraphs. Dkt. 41. Unsatisfied with their prior *ten* claims, the Fourth Amended Complaint ("4AC") purports to assert *sixteen* claims under Florida law. Because Plaintiffs are loath for this Court to review the merits of their new claims, for obvious reasons, they filed a motion to remand along with their Fourth Amended Complaint. Dkt. 40.

Plaintiffs' motion to remand should be denied.

First, it should be denied because Plaintiffs have not abandoned their federal claims in the 4AC. Count 1 of the 4AC seeks "declaratory relief pursuant to 28 U.S.C. § 2201" that their Nexo transactions "were illegal, off-exchange leveraged retail commodity transactions in violation of the Commodity Exchange Act." Dkt. 41 ¶ 220, 222(a). This claim might sound familiar to the Court. Count 1 of the 3AC, which the Court previously dismissed with prejudice (Dkt. 36 at 20), was titled "VIOLATION OF THE COMMODITY EXCHANGE ACT—ILLEGAL OFF-EXCHANGE LEVERAGED RETAIL COMMODITY TRANSACTIONS." Dkt. 19 at 42. Count 1 of the 4AC is substantively identical to Count 1 of the 3AC, alleging that Plaintiffs' Nexo transactions "violated the Commodity Exchange Act" because they were "off-exchange leveraged, margined, or financed retail commodity transactions with Plaintiffs in violation of 7 U.S.C. § 2(c)(2)(D)." Dkt. 41 at Count 2 of the 4AC is an "action for rescission" of Plaintiffs' Nexo transactions and the "grounds for rescission are those alleged in Count I—illegality under the Commodity Exchange Act . . . ." Dkt. 41 ¶¶ 225-227. Count 2 of the 4AC might sound familiar too because the Count 1 of the 3AC also prayed for "rescission of all void and illegal off-exchange leveraged retail commodity transactions and return of all consideration transferred by Plaintiffs

pursuant to those transactions." Dkt. 19 ¶ 137(B). Because Plaintiffs' right to relief in Counts 1-2 of the 4AC necessarily depends on the resolution of substantial questions of federal law under the CEA, this Court has subject matter jurisdiction under 28 U.S.C. § 1331 and *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg*., 545 U.S. 308, 314 (2005). Federal courts have exclusive jurisdiction over CEA claims. 7 U.S.C. § 25(c). The Court can and should deny the motion to remand based on *Grable* alone because the continued presence of two federal CEA claims in the 4AC precludes a discretionary remand under 28 U.S.C. § 1367.

Second, if the Court does not deny remand under *Grable*, it should do so based on the doctrine of fraudulent joinder. Plaintiff Yeidy Montero, who allegedly destroys complete diversity because she is a Dominican Republic citizen, ***was not a named plaintiff when this action was originally filed in state court on May 16, 2025***. Dkt. 1-2 at 2. This action was initiated by Scott Schaaf alone, a U.S. citizen and Florida resident who is completely diverse from foreign Defendants Nexo and Antoni Trenchev. *Id.* at 3. Plaintiffs' counsel did not add Montero as a Plaintiff until the First Amended Complaint ("1AC") filed in state court on September 6, 2025. Dkt. 1-10 at 2. The Court should disregard Montero for purposes of diversity jurisdiction based on the doctrine of "fraudulent misjoinder" because her Nexo transactions were entirely separate from Schaaf's transactions. The Court should not allow Plaintiffs' counsel to defeat diversity through the gambit of combining the claims of two different Nexo customers in one lawsuit. Additionally, the Court should find fraudulent joinder because, given her belated addition to the lawsuit four months after Schaaf, there is no possibility that Montero can prove a cause of action against Nexo. All of her claims fail because they are untimely based on her own admissions, or defective for the reasons explained in the Court's prior order and Nexo's contemporaneously filed motion to dismiss. Once Montero's presence is ignored under the doctrine of fraudulent joinder, the Court must deny remand because complete diversity exists.

Finally, in the unlikely event the Court rejects jurisdiction based on *Grabl*e or the doctrine of fraudulent misjoinder, it can and should retain discretionary jurisdiction under 28 U.S.C. 1367. The 3AC seized this Court with federal question jurisdiction over the entire case or controversy under Article III, and the factors weigh in favor of retaining that jurisdiction here. Judicial economy, fairness, and consistency all favor retaining jurisdiction here. Defendants are not asking the Court to preserve this case for its own sake; they are asking the Court to finish the job by dismissing Plaintiffs' repackaged claims with prejudice rather than remanding them to state court

for duplicative litigation and potentially inconsistent rulings. Plaintiffs should not be permitted to evade this Court's prior dismissal order by changing labels while preserving the same federal predicates and factual allegations.

## PROCEDURAL BACKGROUND

Plaintiff Schaaf filed his Original Complaint in Florida state court on May 16, 2025. Dkt. 1-2 at 12. Plaintiff Montero ***was not*** a named plaintiff in the Original Complaint, and Defendant Trenchev ***was not*** a named defendant. *Id.* at 3-4. Unlike the 4AC, the Original Complaint was only 11 pages long alleged 3 claims for (1) declaratory relief, (2) fraudulent misrepresentation in the inducement of contract, and (3) FDUTPA. *Id.* at 8-10. Schaaf never served the Original Complaint on Nexo. There was complete diversity between the parties in the Original Complaint because Plaintiff Schaaf was a U.S. citizen and resident of Florida, the named Nexo entities were foreign entities and not citizens of Florida, and the amount in controversy exceeded $75,000.

Montero was first added as a Plaintiff in the First Amended Complaint ("1AC") filed in state court on September 6, 2025. Dkt. 1-10 at 2. The 1AC was 18 pages long and alleged 8 claims for (1) declaratory relief, (2) fraudulent misrepresentation in the inducement of contract, (3) FDUTPA, (4) breach of fiduciary duty, (5) negligence, (6) conversion, (7) unjust enrichment, and (8) Florida Civil RICO. *Id.* at 10-15. While Plaintiffs' counsel expanded the number of claims, it reduced the number of defendants to only the current two defendants: Nexo Capital Inc. and Antoni Trenchev. *Id.* at 2. The 1AC was the first pleading where Trenchev was named as a defendant.

Plaintiffs did not perfect service of the 1AC until November 14, 2025, when Defendants executed waivers of service of process, which were filed in state court on November 17, 2025. Dkt. 1 ¶ 4. Defendants timely removed on December 12, 2025. Dkt. 1. Because the 1AC simply alleged that Montero was a resident of Florida and did not allege that she was a Dominican Republic citizen, Nexo removed on the basis of diversity of citizenship.

Plaintiffs did not seek to remand the 1AC based on the contention that there was not complete diversity because Montero was a Dominican Republic citizen. Instead, Plaintiffs moved this Court to file a Second Amended Complaint ("2AC") on December 18, 2025 (Dkt. 9), followed by a Third Amended Complaint ("3AC") on February 20, 2026 (Dkt. 19). Nexo did not oppose Plaintiffs' motion for leave to file either of those two amendments. Dkt. 5, 17. The 3AC was 102 pages long, with another 106 pages of 25 exhibits. Dkt. 19 at 102-104 (final page of pleading and exhibit index). The 3AC invoked this Court's federal question jurisdiction. In particular, it asserted

10 claims. Counts 1-4 alleged violations of the federal CEA. Counts 5-6 alleged violations of federal RICO. The remaining counts were for fraud (Count 7), fraudulent inducement / fraud in the execution (Count 8), FDUTPA (Count 9), and Civil Theft (Count 10).

At the time the Court granted Defendants' motion to dismiss the 3AC on June 5, 2026, the Court had federal question jurisdiction under 28 U.S.C. § 1331 over the six federal claims alleged in the 3AC, and supplemental jurisdiction under 28 U.S.C. § 1367 of the four state law claims. The Court dismissed all claims in the 3AC. It dismissed with prejudice the four CEA claims as time barred. It dismissed with prejudice the two RICO claims as time barred. It dismissed with prejudice the fraud and FDUTPA claims as time barred to the extent they were based on conduct before May 16, 2021, and without prejudice for any conduct afterwards. Finally, it dismissed without prejudice the civil theft count for failure to state a claim. Dkt. 36 at 20-21.

Plaintiffs filed their Fourth Amended Complaint ("4AC") on July 2, 2026, which is 75 pages long, contains 408 numbered paragraphs, and alleged sixteen claims: (1) declaratory relief under the CEA, (2) rescission under the CEA, (3) unjust enrichment, (4) fraudulent inducement, (5) Florida misleading advertising, (6) FDUTPA, (7) fraud, (8) fraudulent omission, (9) negligent misrepresentation, (10) usury, (11) conversion , (12) civil theft, (13) breach of contract and the implied covenant, (14) Florida RICO, (15) Florida RICO Conspiracy, and (16) Florida RICO—Unlawful Debt Collection. Critically, Counts 1 and 2 of the 4AC are exclusively based on the allegation that Plaintiffs' Nexo transactions were "illegal, off-exchange leveraged retail commodity transactions in violation of the Commodity Exchange Act," and seek rescission of the transactions on that basis, which is identical to Count 1 of the 3AC that was previously dismissed with prejudice. As reflected in the chart below, Plaintiffs have ignored the Court's order and repleaded in substance all of the claims that the Court previously dismissed:

| **Fourth Amended Complaint** | **Third Amended Complaint** | **Comparison** | **Paragraph Citations** |
|---|---|---|---|
| 4AC Count I — Declaratory Relief Under CEA | 3AC Count I and Prayer for Relief | The same federal claim that the Nexo transactions were "illegal, off-exchange leveraged retail commodity transactions in violation of the Commodity Exchange Act" | FAC ¶¶ 219–223; TAC ¶¶ 126–137; Prayer for Relief A(a)–(d). |
| 4AC Count II — Rescission Under CEA | 3AC Count I and Prayer for Relief | The same federal claim seeking rescission because the Nexo transactions were | FAC ¶¶ 224–230; TAC ¶¶ 126–137, 213– |

| | | | |
|---|---|---|---|
| | | "illegal, off-exchange leveraged retail commodity transactions in violation of the Commodity Exchange Act" | 226; Prayer for Relief B(b), C(a). |
| 4AC Count III — Unjust Enrichment | 3AC Prayer for Relief | The same restitution and disgorgement theory | FAC ¶¶ 231–236; TAC Prayer for Relief B(a)–(b), C(d). |
| 4AC Count IV — Fraudulent Inducement | 3AC Count VII Fraud<br><br>3AC Count VIII Fraudulent Inducement/Fraud in the Execution | The same fraudulent inducement theory | FAC ¶¶ 237–249; TAC ¶¶ 195–212, 213–226. |
| 4AC Count V — Florida Misleading Advertising: Liquidation Relief Program | 3AC Count VII Fraud<br><br>3AC Count VIII Fraudulent Inducement/Fraud in the Execution. | The same false advertising theory | FAC ¶¶ 250–260; TAC ¶¶ 76–78, 109, 196(g), 231(j). |
| 4AC Count VI — FDUTPA | 3AC Count IX — FDUTPA | The same FDUTPA theory | FAC ¶¶ 261–269; TAC ¶¶ 227–235. |
| 4AC Count VII — Fraud: NEXO Token SEC Misrepresentation | 3AC Count VII Fraud | The same fraud theory based on the registration status of the NEXO Token | FAC ¶¶ 270–279; TAC ¶¶ 196(l), 205–211. |
| 4AC Count VIII — Fraudulent Omission | 3AC Count VII Fraud<br><br>3AC Count VIII Fraudulent Inducement/Fraud in the Execution | The same fraudulent omission theory | FAC ¶¶ 280–288; TAC ¶¶ 197–199, 220–224. |
| 4AC Count IX — Negligent Misrepresentation | 3AC Count VII Fraud<br><br>3AC Count VIII Fraudulent Inducement/Fraud in the Execution | The same fraudulent inducement theory, recharacterized as a negligence claim | FAC ¶¶ 289–298; TAC ¶¶ 195–212, 231(a)–(l). |
| 4AC Count X — Usury | 3AC Prayer for Relief | The same restitution and disgorgement theory | FAC ¶¶ 191–210, 299–304; TAC ¶¶ 86–88, 99–107, Prayer for Relief B(a), D(b). |
| 4AC Count XI — Conversion | 3AC Count X Civil Theft | The same conversion / civil theft theory | FAC ¶¶ 305–314; TAC ¶¶ |

| | | | |
|---|---|---|---|
| | | | 236–244, 102–108. |
| 4AC Count XII — Civil Theft | 3AC Count X — Civil Theft | The same conversion / civil theft theory | FAC ¶¶ 315–324; TAC ¶¶ 236–244. |
| 4AC Count XIII — Breach of Contract / Implied Covenant | | Both the 4AC and the 3AC plead contract *illegality*; Plaintiffs do not identify the contract or explain how Nexo breached | |
| 4AC Count XIV — Florida RICO | 3AC Count V — Federal RICO | The same RICO theory with purported state law predicates | FAC ¶¶ 335–387; TAC ¶¶ 161–184. |
| 4AC Count XV — Florida RICO Conspiracy | 3AC Count VI — Federal RICO Conspiracy | The same RICO conspiracy theory with purported state law predicates | FAC ¶¶ 388–395; TAC ¶¶ 185–193. |
| 4AC Count XVI — Florida Civil RICO: Collection of Unlawful Debt | 3AC Count V — Federal RICO | The same RICO theory with purported state law predicates | FAC ¶¶ 396–408; TAC ¶¶ 86–88, 126–137, 171–184, Prayer for Relief A(c), B(a)–(b). |

As to the 3AC, the Court's prior dismissal order was crystal clear that Plaintiffs' fraud (Count VII), fraudulent inducement / fraud in the execution (Count VIII), and FDUTPA (Count IX) claims were dismissed with prejudice to the extent they were "premised on conduct that took place prior to May 15, 2021." Dkt. 36 at 20-21. ***The 4AC simply ignores the Court's dispositive statute of limitations order.*** All sixteen claims in the 4AC—including repleaded fraud, fraudulent inducement, and FDUTPA claims identical to the ones in the 3AC—are based on alleged wrongdoing that occurred before May 15, 2021. The only thing that happened after that date were the liquidations authorized by the Credit Terms between May 17 and May 23, 2021. Dkt. 41 ¶ 405.

Contemporaneously with filing the 4AC, Plaintiffs filed the present motion to remand, arguing for the first time that complete diversity is absent because Montero is a Dominican Republic citizen. However, Plaintiffs do not dispute that the Court has federal question jurisdiction over this matter because it adjudicated and dismissed six federal claims on the merits, or that the Court has continuing supplemental jurisdiction over the newly pleaded state law claims. Plaintiffs also do not address the fraudulent joinder of Montero.

## ARGUMENT

**I. The Court Has Continuing Federal Question Jurisdiction Over the Fourth Amended Complaint Under *Grable* Because Plaintiffs Continue To Plead Two Claims Under the Commodities Exchange Act**

Plaintiffs argue that the Court lacks diversity jurisdiction and should decline supplemental jurisdiction because the prior federal CEA and RICO counts were dismissed. But the 4AC supplies a continuing, independent basis for federal question jurisdiction. Plaintiffs did not simply plead ordinary state law claims after dismissal of their six federal counts. The 4AC *again* places the CEA at the center of the case by seeking a declaration that Plaintiffs' Nexo transactions were "illegal, off-exchange leveraged retail commodity transactions in violation of the Commodity Exchange Act," and that they are entitled to rescission as a result. This is exactly the same federal claim, and exactly the same rescission remedy, that Plaintiffs requested in Count 1 of the 3AC, which this Court previously dismissed with prejudice. The fact Plaintiffs have engaged in artful pleading—by relabeling and splitting[2] Count 1 of the 3AC into "declaratory relief" and "recission" claims in Counts 1 and 2 of the 4AC—does not change the substance of the federal CEA claim. The purported right that they seek to pursue through these state law procedural vehicles is a federal right arising directly under the CEA. The fact that this Court previously dismissed with prejudice the same substantive CEA claim, coupled with this Court's exclusive federal jurisdiction over CEA claims, only strengthens the conclusion that the Court has continuing federal question jurisdiction over this matter. The embedded federal question, which is a necessary element to support liability against Nexo, supports federal question jurisdiction under *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005).

Under *Grable*, federal question jurisdiction exists over a state law claim where a federal issue is (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution

---

[2] Count 1 of the 4AC is a "declaratory relief" claim that seeks a declaration that Plaintiffs' transactions with Nexo are "void and unenforceable," and "illegal" under the CEA. Dkt. 41 ¶ 222. Count 2 is a "recission" claim based on the CEA that is purely derivative of Count 1. It alleges that "Count I seeks a declaration that these transactions are void; this Count [II] seeks the relief that follows from that declaration — unwinding the transactions — and applies equally if the Court finds the transactions voidable rather than void." *Id.* ¶ 226. It expressly alleges that "[t]he grounds for rescission are those alleged in Count I." *Id.* ¶ 227. Both aspects of this split relief—the declaration of illegality under the CEA and the request for rescission under that federal statute—were contained in the previously dismissed Count I of the 3AC. Dkt. 19 ¶¶ 134, 137(B).

in federal court without disrupting the federal-state balance approved by Congress. The Eleventh Circuit applies that four-part formulation as the governing framework for embedded federal question jurisdiction. *Schleider v. GVDB Operations, LLC*, 121 F.4th 149 (11th Cir. 2024). All four requirements are satisfied here.

First, the federal issue is necessarily raised because Plaintiffs "right to relief" "depend[s] on the resolution of a substantial question of federal law." *Roman v. Hooters Spring Hill, Inc.*, 2016 WL 8997452 (M.D. Fla. July 8, 2016). Count I seeks a declaration that the challenged transactions are illegal, void, and unenforceable because they allegedly constitute unlawful leveraged retail commodity transactions under the CEA. Count II seeks rescission based on the CEA. Those counts cannot be adjudicated without deciding the federal question. The federal issue is therefore not incidental or collateral. Plaintiffs' claims hinge upon it.

Counts 1 and 2 of the 4AC affirmatively seek a federal law determination that their Nexo transactions violated the CEA and therefore are "illegal, void, and unenforceable." FAC ¶¶ 219–23. Federal law is the basis for substantive liability. Because a declaration based only on state law would not resolve Counts 1 and 2, these claims "unavoidably involve[] answering federal questions." *Turbeville v. FINRA*, 874 F.3d 1268, 1275 (11th Cir. 2017); *see also Roman*, No. 8:16-2016 WL 8997452, at *2 (finding federal question jurisdiction over declaratory judgment claim that defendant violated the FLSA). Plaintiffs affirmatively ask the Court to determine whether Nexo violated the CEA as the predicate for imposing liability under Counts 1 and 2. There is no state law question. That is the type of embedded federal question that *Grable* recognizes.

Second, the federal issue is actually disputed. Plaintiffs allege that their Nexo transactions were illegal under the CEA. Defendants dispute that characterization. The parties' disagreement is not over a peripheral fact; it is over whether the CEA governs the transactions in the manner Plaintiffs allege and what legal consequences follow. That is an actual dispute over federal law.

Third, the federal issue is substantial. The substantiality inquiry looks to the importance of the federal issue to the federal system as a whole, not merely to the parties. Counts 1 and 2 ask a federal court to decide the scope and application of the CEA to cryptocurrency transactions, which could have substantial ramifications beyond this case. These are novel federal questions. Because Plaintiffs' claims require construction of a complex federal regulatory scheme and its application to cryptocurrency, the federal issue is substantial in the *Grable* sense.

*Ga. Gambling Recovery LLC v. Kalshi Inc.*, No. 4:25-cv-310 (CDL), 2026 WL 279375,

2026 U.S. Dist. LEXIS 21805, at *9 (M.D. Ga. Feb. 2, 2026) is instructive. In *Kalshi*, the Plaintiff asserted claims under Georgia state law, O.C.G.A. § 13-8-3, which provides that all "[g]ambling contracts are void," and authorizes "any person" to recover "[m]oney paid or property delivered upon a gambling consideration" within four years of the gambling loss. In finding federal question jurisdiction under *Grable*, the *Kalshi* court explained that that "whether a gambling contract is void under O.C.G.A. § 13-8-3 depends on whether the contract is unlawful under the law governing its validity." *Id.* at *10. The Court explained the central role of the CEA to this nominal state law claim:

> Plaintiff alleges that Kalshi is a CFTC-designated commodities exchange that offers event contracts on its own platform and through Robinhood and Webull. Compl. ¶¶31-32; 38-39. As a result, whether the contracts at issue are unlawful gambling contracts—or instead federally authorized event contracts—cannot be resolved by reference to Georgia law alone. Thus, Plaintiff's ability to sustain a claim upon which relief may be granted necessarily depends on the interpretation and application of the CEA and the scope of the CFTC;s exclusive jurisdiction.

*Id.* at *11-12. After assessing the *Grable* factors, the *Kalshi* court concluded that "because Plaintiff's right to relief necessarily depends on the resolution of a substantial question of federal law, this Court has subject matter jurisdiction under 28 U.S.C. § 1331." *Id.* at *13. The Court concluded with the following observation relevant here:

> Lawyers (and sometimes judges) often make the simple complicated. But sometimes they also oversimplify. The pending motion presents the temptation to do either. The Court here attempts to avoid both. Congress has conferred jurisdiction on the federal courts if a civil action arises under a federal statute. The Courts have consistently rejected an over-simplified interpretation that would require a federal statute to be the sole basis for the claim for a federal court to have jurisdiction. Courts have sometimes over-complicated this issue by making the distinction between an affirmative defense and an essential element to be resolved as part of Plaintiff's claim. Synthesizing these cases, the Court concludes that for federal jurisdiction the plaintiff's right to relief must be dependent on the resolution of a substantial question of federal law. Plaintiff here contends that it is entitled to recover gambling losses arising from contracts that are illegal under Georgia law, while Defendants contend that those same contracts are authorized and exclusively governed by federal law. Thus, an essential element of Plaintiff's claim, the legality/illegality of the contracts, necessarily depends on the application of federal law. Because Plaintiff's right to relief depends upon the resolution of a substantial question of federal law, Plaintiff's motion to remand (ECF No. 35) is denied.

*Id.* at *13-14.

Nexo agrees with the reasoning and result of *Kalshi*. However, the grounds for finding federal question jurisdiction in this case ***are even stronger*** here. In *Kalshi*, the plaintiff sought relief under a Georgia statute that purported to authorize a private right of action under state law, though it relied on a substantial federal law predicate to establish illegality.

Here, in contrast, Plaintiffs only seek relief under the state law *procedural vehicles* of declaratory relief and rescission—two nominal state law claims that do not, in themselves, create any substantive rights. As explained in Nexo's concurrently filed motion to dismiss, purported violations of federal law cannot serve as a predicate for federal or state declaratory relief claims when the federal law at issue does not supply a private cause of action, or by extension when the limited private cause of action supplied by federal law has already been dismissed with prejudice. *See Anglade v. Wells Fargo Bank, N.A.*, 2011 U.S. Dist. LEXIS 175551, at *11-12 (S.D. Fla. Sep. 6, 2011) (dismissing declaratory relief claim predicated on alleged violation of TILA because the federal "declaratory judgment acts should not be invoked to provide relief where Congress expressly refused to provide it," and noting "the same rationale applies with respect to Florida's Declaratory Judgment Act" because that state statute "is merely a procedural mechanism that should not confer rights otherwise unavailable to plaintiffs.").

The *Anglade* principle is well established in this circuit and routinely results in the dismissal of declaratory relief claims predicated on alleged violations of federal law that the plaintiff has no standing to pursue. *See Educ. Corp. of Am. v. United States Dep't of Educ.*, No. 2:18-cv-01698-AKK, 2018 U.S. Dist. LEXIS 188777, at *15-16 (N.D. Ala. Nov. 5, 2018) (dismissing declaratory relief claim predicated on violation of HEA); *Millenium Labs., Inc. v. Universal Oral Fluid Labs., Ltd. Liab. Co.*, No. 8:11-cv-1757-MSS-TBM, 2012 U.S. Dist. LEXIS 191035, at *11-13 (M.D. Fla. Apr. 25, 2012) (same for claims predicated on violations of the Federal Anti-Kickback Statute, 42 U.S.C § 1320a-7b(b), and the Stark Law, 42 U.S.C § 1320a-7b(b)). In light of this authority, Counts 1 and 2 of the 4AC can only be construed as reasserting the same CEA claims that the Court previously dismissed.

*Norris v. Brady*, 668 F. Supp. 3d 1257 (S.D. Fla. 2023), is also instructive. There, the plaintiff brought a Florida declaratory judgment claim seeking a declaration that the financial products at issue were securities required to be registered under federal law. The court held that *Grable* jurisdiction existed because the declaratory claim necessarily required a federal law determination, the federal issue was actually disputed, the question was substantial, and federal

adjudication would not upset the federal-state balance. Again, the same reasoning applies with even greater force here. Plaintiffs' Count I asks for a declaration that the challenged Nexo transactions were illegal, void, and unenforceable because they violated the CEA; Count II seeks rescission on that same federal predicate. Just as the declaration in *Norris* could not be granted without deciding whether the products were federally regulated securities, Plaintiffs' requested relief here cannot be granted without deciding whether the challenged transactions are governed by—and unlawful under—the CEA.

*Norris* also answers Plaintiffs' argument that jurisdiction is lacking because their current claims are nominally brought under state law. The claim in *Norris* was likewise framed under Florida's Declaratory Judgment Act, but the court looked past the label to the substance of the relief requested. Because the requested declaration turned on the meaning and application of federal securities law, the federal issue was not merely referenced; it was the necessary predicate for relief. Plaintiffs' FAC does precisely the same thing with the CEA.

The substantiality analysis in *Norris* is also directly supportive. The *Norris* court treated the federal issue as substantial because it presented a pure issue of federal law with significance beyond the immediate dispute. Plaintiffs' CEA theory presents the same type of question. Plaintiffs do not merely seek compensation for a private breach or misrepresentation; they ask the Court to determine whether cryptocurrency transactions are illegal under the CEA. As in *Norris*, federal jurisdiction is appropriate because the dispute turns on the interpretation and application of a federal regulatory scheme, not on the routine application of state law to private facts.

*Norris* further confirms that exercising jurisdiction here respects the federal-state balance. The court did not view jurisdiction over a Florida declaratory claim as an intrusion on state authority because the claim required resolution of a discrete federal regulatory question. So too here. Defendants are not asking the Court to federalize every Florida claim involving cryptocurrency. Defendants ask only that the Court retain jurisdiction over a complaint in which Plaintiffs themselves made CEA applicability and CEA illegality the predicate for declaratory and rescission relief.

The same logic extends beyond the declaratory and rescission counts. Count VII, styled "Fraud (NEXO Token SEC Misrepresentation)," expressly alleges that Nexo represented that "the NEXO Token is registered with the SEC as a security," that the statement was false because "Nexo never registered the NEXO Token with the SEC," and that Plaintiffs relied on that SEC registration

representation in holding their NEXO Tokens rather than selling them. FAC ¶¶ 270–76. The 4AC further alleges that Nexo had filed a Form D notice of an exempt offering, that the SEC had contacted Nexo regarding its marketing, and that the NEXO Token was not registered. FAC ¶¶ 272–73, 279. That fraud theory cannot be resolved without addressing federal securities laws: whether the NEXO Token was a security under federal law, whether it was registered with the SEC, whether any federal filing or exemption had the legal significance Plaintiffs attribute to it, and whether the challenged statements were false in light of federal securities laws. In *Norris*, the embedded federal issue was whether the products were securities required to be registered under federal law. Plaintiffs' fraud count presents the same type of federal securities issue. Count VII independently reinforces *Grable* jurisdiction.

Exercising jurisdiction will not disturb the congressionally approved balance of federal and state judicial responsibilities. This case does not invite federal courts to hear every state law claim that mentions federal law. Jurisdiction exists because Plaintiffs themselves made a disputed CEA issue the predicate for Counts 1 and 2 and disputed federal securities issues the predicate for Count 7. This Court has already held that Plaintiffs lack standing to pursue private CEA claims. In dismissing the earlier CEA counts with prejudice, the Court held that Plaintiffs did not fit within any category of private plaintiffs authorized by 7 U.S.C. § 25(a)(1)(A)–(D), rejected Plaintiffs' argument that Section 2(c)(2)(D)'s "as if" language created a private right of action, and concluded that the provision expanded the CFTC's jurisdiction and enforcement authority—not private enforcement rights. Dkt 36 at 5–8, 20–21. Plaintiffs now attempt to place the same CEA question back before the Court through state law declaratory and rescission claims. That maneuver underscores, rather than defeats, *Grable* jurisdiction. Because the 4AC necessarily raises an actually disputed and substantial federal issues that can be resolved in federal court without upsetting the federal-state balance, the Court has original jurisdiction under *Grable*.

**II. The Court Has Diversity Jurisdiction Based On the Doctrine of Fraudulent Joinder**

The Court can and should deny the motion to remand based on *Grable* alone. However, the Court also has diversity jurisdiction over the 4AC under the doctrine of fraudulent joinder because Montero should never have been joined in this action. Her claims against Nexo are distinct from Schaaf's claims, and because Montero clearly no viable claims against Nexo. Montero's transactions with Nexo were entirely separate from Schaaf's, and all her claims are indisputably time barred because she was not added to this lawsuit until nearly four months after Schaaf filed

his Original Complaint.

There is complete diversity between Shaaf (a U.S. citizen and resident of Florida), Nexo (a Cayman Islands entity), and Trenchev (a Bulgarian citizen and foreign resident). The doctrine of "fraudulent joinder" provides that diversity jurisdiction may be found to exist despite the presence of one or more non-diverse parties, here Montero, if the defendant establishes that plaintiff has added the non-diverse party to defeat federal diversity jurisdiction. *Henderson v. Washington Nat. Ins. Co.*, 454 F.3d 1278, 1281 (11th Cir. 2006). The Eleventh Circuit recognizes three types of fraudulent joinder: (1) if there is no possibility the plaintiff can prove a cause of action against the resident defendant;4 (2) if there has been outright fraud by the plaintiff in pleading jurisdictional facts; or (3) "fraudulent misjoinder," in which an improper joinder is "so egregious" as to be fraudulent. *Tapscott v. MS Dealer Service Corp*., 77 F.3d 1353, 1360 (11th Cir. 1996), *abrogated on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000). The Court should find fraudulent joinder on the first and third grounds.

For the reasons more thoroughly explained in Nexo's motion to dismiss, there is no possibility that Montero can prove a cause against Nexo or Trenchev because she pleads that her claims are time barred. In particular, Montero pleads that her final liquidation occurred in May 2021, and that her claims accrued no later than that date. Dkt. 41 ¶¶ 163, 408 (referencing final liquidations on May 23, 2021). However, Montero was not named as a Plaintiff until the First Amended Complaint was filed on September 6, 2025, which is more than four years after May 23, 2021. Thus, 11 of her 16 claims with a statute of limitations of 4 years or less are time barred. *See* Fla. Stat. § 95.11(3)(k) (four-year limitations period for rescission); Fla. Stat. § 95.11(3)(j) and § 95.11(3)(p) (four-year limitations period for unjust enrichment); Fla. Stat. § 95.11(3)(i) and § 95.031(2)(a) (four-year limitations period for fraud, fraudulent inducement, fraudulent omission, and negligent misrepresentation); Fla. Stat. § 95.11(3)(e), § 95.11(3)(i), and § 95.031(2)(a) (four-year limitations period for misleading advertising); Fla. Stat. § 95.11(3)(e) (four-year limitations period for FDUTPA); Fla. Stat. § 95.11(4)(d) and § 687.04 (two-year limitations period to forfeit interest or enforce a usury penalty); Fla. Stat. § 95.11(3)(j) (four-year limitations period for recovery of money paid under an unwritten usury liability); Fla. Stat. § 95.11(3)(g) (four-year limitations period for conversion); Fla. Stat. § 95.11(3)(j) (four-year limitations period for breach of an oral or unwritten contract).

Nor can Montero avoid that result through relation back. Florida Rule of Civil Procedure

1.190(c) does not specifically authorize the addition of a new party after limitations has run, and Florida law squarely provides that "the addition of a new party to an action will not relate back to the original complaint." *Schwartz ex rel. Schwartz v. Wilt Chamberlain's of Boca Raton, Ltd.*, 725 So. 2d 451, 453 (Fla. 4th DCA 1999). This makes good sense, as Nexo could not have been put on notice of Montero's claims when Schaaf filed a lawsuit limited to his transactions.

Montero's only claims in the 4AC with a 5-year limitations period are her civil theft, breach of written contract, and RICO claims. But those claims fail for the reasons explained in Nexo's motion to dismiss. The Florida RICO claims are time barred for the reasons explained in the Court's prior order, and also because Montero fails to plead a viable RICO enterprise, among other grounds. The civil theft claim is barred for the same reason explained in the Court's prior order, which Montero failed to cure in the 4AC. Finally, the breach of contract claim fails because Montero fails to identify the relevant written contract, or explain the breach. Montero alleges that the contracts governing her Portfolio Booster and other transactions were not reduced to writing, Dkt. 41 ¶ 92, so any unwritten contract claim would be time barred. But more fundamentally, her entire case is premised on voiding all purported contracts, not enforcing them, so any breach claim is not viable. This Court recognized in its prior order that the contractually authorized liquidations occurred pursuant to the black letter text of the Credit Terms.[3] *See* Nexo's Crypto Credit General Terms and Conditions ("Credit Terms"), Dkt. 12-1; Dkt 36 at 15.

The Court should also find fraudulent misjoinder because Montero's claims are separate and distinct from Schaaf's—different account, different onboarding history, different deposits, different withdrawals, different loans, different alleged reliance, and different liquidations. The 4AC itself pleads those distinctions. Montero allegedly considered opening her own Nexo account only after watching Schaaf use the platform, then held off for months while conducting her own diligence. Dkt. 41 ¶ 48. She then allegedly saw different public marketing statements about the NEXO Token being "SEC compliant" and about "No Hidden Fees" and "Zero Fees," deposited approximately $77,000 on December 6, 2020, became nervous, withdrew all of her assets, and had

[3] Montero has been unable to cure the defects in her claims after four pleading amendments, and Schaaf has been unable to do so after five amendments. Given Plaintiffs' repeated failure to cure deficiencies by amendments previously allowed, including three amendments in federal court alone, Court should dismiss all claims with prejudice, and without leave to amend. *See Klusmeier v. Bell Constructors, Inc.*, 469 F. App'x 718, 722 (11th Cir. 2012) (finding no abuse of discretion where district court denied plaintiff's request for leave to file a third amended complaint).

an empty account by the end of January 2021. *Id.* ¶¶ 50–51. Those facts are unique to Montero. They are not Schaaf's account activity, not Schaaf's pre-account diligence, not Schaaf's reliance, and not Schaaf's alleged injury.

Nor does the fact that Montero and Schaaf later allegedly discussed Nexo together transform their separate claims into a single transaction or occurrence. Plaintiffs plead that on February 5, 2021, Montero and Schaaf both viewed Trenchev's Bloomberg appearance and then "consult[ed] with each other" before deciding that Nexo was a legitimate company and a good investment. *Id.* ¶¶ 52–54. But that allegation confirms the individualized nature of Montero's claim: her alleged decision to redeposit assets was made after her own prior account activity, after she had already emptied her account, and after she allegedly reached a separate investment decision about her own retirement and daughter's college fund. *Id.* ¶¶ 51–54. She then deposited her own assets—$119,000 in USDT and 55,164 NEXO Tokens—for a total alleged value of approximately $211,000. *Id.* ¶ 53. Schaaf allegedly made his own deposits and took his own loans. The fact that spouses discussed whether to use the same online platform does not merge their distinct account histories, deposits, loans, contractual relationships, or alleged losses into one claim.

The ordinary-loan allegations underscore the point. The 4AC alleges that between February 18 and 21, 2021, Montero took a series of credit-line loans, including $180,000 on February 19 and $123,000 on February 21, while Schaaf separately borrowed $50,000 on February 19. *Id.* ¶ 55. Those were not joint loans, joint deposits, or joint account transactions. They were separate extensions of credit to separate Nexo customers in separate account ledgers, with separate collateral, separate balances, separate liquidation mechanics, and separate damages. Likewise, Plaintiffs' allegations about the NEXO Token turn on what each Plaintiff saw, when each Plaintiff relied, what each Plaintiff held, and what each Plaintiff allegedly would have done instead. *Id.* ¶¶ 56–57. Resolving Montero's claims would therefore require individualized proof about her account opening, her diligence, her deposits, her withdrawals, her loans, her reliance, her alleged damages, and the timeliness of her claims. That is not the same transaction or occurrence as Schaaf's separate dealings with Nexo. Plaintiffs' counsel cannot defeat diversity by combining two different Nexo customers in one pleading merely because they are spouses and allegedly discussed the same public statements. Montero's joinder is precisely the sort of procedural gambit fraudulent-misjoinder doctrine is designed to prevent, and the Court should disregard her

citizenship for purposes of diversity jurisdiction.

**III. The Court Should Exercise Its Discretion To Retain Supplemental Jurisdiction Under 28 U.S.C. § 1367**

Plaintiffs are also wrong to suggest that dismissal of the prior federal counts automatically requires remand. Once this Court obtained original federal question jurisdiction over Plaintiffs' federal claims, it also obtained supplemental jurisdiction over the related state-law claims that formed part of the same case or controversy under Article III. 28 U.S.C. § 1367(a). Section 1367 does not divest the Court of jurisdiction merely because the federal claims were later dismissed. To the contrary, the Eleventh Circuit has confirmed that a district court has discretion to continue exercising jurisdiction over state-law claims even after dismissing the federal claim that created original jurisdiction. *Pintando v. Miami-Dade Hous. Agency*, 501 F.3d 1241, 1242–43 (11th Cir. 2007). That is the governing standard here: dismissal of federal claims permits, but does not require, the Court to decline supplemental jurisdiction.

Rather, the statute gives the Court discretion to retain jurisdiction over the remaining claims, particularly where the claims arise from the same facts, transactions, and legal theories already litigated in this Court. That discretion is confirmed by the text of § 1367(c). Although a district court may decline supplemental jurisdiction if it has dismissed all claims over which it had original jurisdiction, the statute is permissive, not mandatory. The question is not whether the Court has power to keep the case; it does. The question is whether considerations of judicial economy, convenience, fairness, and comity favor retaining jurisdiction. Here, they do. Plaintiffs' current claims arise from the same Nexo products, transactions, alleged representations, and federal-law predicates that have already been briefed and adjudicated in this Court. Requiring a state court to restart that analysis would waste judicial resources and reward Plaintiffs' attempt to replead around this Court's prior dismissal order.

*Norris v. Brady*, 668 F. Supp. 3d 1257 (S.D. Fla. 2023), again supports that conclusion. There, after finding original federal-question jurisdiction under *Grable*, the court also retained supplemental jurisdiction over the plaintiff's remaining state-law claims because they derived from the same common nucleus of operative fact as the claim raising the embedded federal issue. The court recognized that § 1367 permitted the exercise of jurisdiction over related state-law claims once the federal issue supplied original jurisdiction. The same principle applies here. Plaintiffs' declaratory, rescission, fraud, and related state-law counts all arise from the same alleged conduct,

the same transactions, and the same theory that Nexo's products were unlawful under federal law. Once federal-question jurisdiction attached—whether through Plaintiffs' earlier federal counts or through the embedded federal issues in the current pleading—the Court has discretion to retain jurisdiction over the rest of the case.

Exercising that discretion is especially appropriate here because Plaintiffs' Fourth Amended Complaint is not a clean break from the dismissed federal claims. It is an effort to continue litigating the same federal predicates under different labels. Section 1367 gives the Court discretion to prevent exactly that kind of inefficient relitigation. Defendants are not asking the Court to retain jurisdiction for its own sake; they are asking the Court to exercise its authority to finish what the case already required this Court to decide. As the Supreme Court recently explained, "when a plaintiff cuts her federal claims, the court should have a choice about how best to get rid of the case." *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 40 (2025). Here, the appropriate choice is dismissal, not remand. Remand would invite Plaintiffs to ask a state court to decide the same CEA and federal securities-registration predicates that this Court has already addressed, and to use those federal predicates to revive claims derived from federal theories dismissed with prejudice. That would undermine the practical force of the Court's prior dismissal order, waste judicial resources, and create a substantial risk of inconsistent rulings on issues intertwined with this Court's judgment. Retaining supplemental jurisdiction avoids those harms. It permits this Court—already familiar with the parties, pleadings, transactions, and federal statutory issues—to dispose of the repackaged claims in a single forum, preserve the coherence of its prior rulings, and prevent Plaintiffs from using artful repleading as a path to relitigate federal questions in state court.

The discretionary factors—judicial economy, convenience, fairness, and comity—strongly favor retaining jurisdiction. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). This is not the "usual case" in which federal claims disappear at the outset before the federal court has invested meaningful resources. The Court has already adjudicated a full merits motion to dismiss directed at Plaintiffs' 102-page 3AC, including six federal counts and four state-law counts, and issued a detailed order dismissing every claim. Dkt. 36. That order did not merely dispose of federal counts on jurisdictional or technical grounds. It analyzed Plaintiffs' CEA theories, rejected their standing theory under 7 U.S.C. § 25, dismissed their CEA claims with prejudice, dismissed their RICO claims with prejudice as time barred, held the fraud and FDUTPA theories time barred

to the extent based on pre-May 16, 2021 conduct, and dismissed the civil theft count for failure to state a claim. *Id.* at 5–21. Those rulings now frame the operative dispute because the 4AC repackages the same transactions, the same alleged representations, the same liquidation theory, and the same federal predicates under a larger set of Florida-law labels.

Judicial economy is therefore the strongest factor. The Eleventh Circuit has recognized that a court should retain jurisdiction where "substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort." *Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 746 (11th Cir. 2006) (quoting *Graf v. Elgin, Joliet & E. Ry. Co.*, 790 F.2d 1341, 1347–48 (7th Cir. 1986)). That is precisely this case. A state court would have to reacquaint itself with multiple pleadings, the Nexo platform allegations, the Credit Terms, Plaintiffs' account and liquidation chronology, the asserted CEA theory, the prior federal RICO theory, the statute-of-limitations issues, and this Court's dismissal order. That duplication is unnecessary because this Court has already done that work. Like *Law v. Hausmann*, where the court retained supplemental jurisdiction after substantial resources had been expended and prior rulings would materially affect the remaining claims, the Court's prior order here will necessarily impact the 4AC and the pending motion to dismiss. *See Law v. Hausmann*, No. 1:20-cv-3658-MLB, 2022 U.S. Dist. LEXIS 104464, at *7–9 (N.D. Ga. June 10, 2022). Retention avoids requiring another court to start over on issues this Court has already mastered.

Convenience also favors retention. The case has been litigated in this Court for months. The parties have briefed multiple motions here, the Court has reviewed the governing documents and pleadings here, and Defendants' pending motion to dismiss the 4AC is directed to the same record and same pleading history already before this Court. Remand would not create any practical convenience. It would instead require a new judge and a new docket to absorb the same voluminous history before reaching issues that are already fully teed up here. That is especially inefficient where Plaintiffs themselves chose to file amended federal pleadings in this forum, asserted six federal causes of action, and only sought remand after receiving an adverse merits ruling. Nothing about convenience supports moving the case now.

Finally, fairness weighs in Defendants' favor. This is the fifth complaint—the third in federal court, and the third time Nexo has been required to brief the same meritless and time barred facts. The Court should retain jurisdiction, dismiss all remaining claims with prejudice and not force Nexo to defend itself against meritless claims in a new forum again.

## **CONCLUSION**

For these reasons, Plaintiffs' motion to remand should be denied. The Court has original federal-question jurisdiction under *Grable*, or alternatively has diversity jurisdiction under the doctrine of fraudulent joinder. In any event, the Court has discretion under 28 U.S.C. § 1367 to retain jurisdiction over all claims in the 4AC because the Court's merits dismissal of the six federal claims in the 3AC vested this Court with continuing federal question jurisdiction over the entire case or controversy under Article III.

BAKER & MCKENZIE LLP
830 Brickell Plaza, Suite 3100
Miami, Florida 33131
Phone: (305) 789-8900
Fax: (305) 789-8953

By: */s/ Adrienne Harreveld*
Adrienne Harreveld, Esq.
Florida Bar No. 1035946
adrienne.harreveld@bakermckenzie.com

Ian S. Shelton, Esq.
(admitted *pro hac vice*)
Baker & McKenzie LLP
800 Capitol Street, Suite 2100
Houston, Texas 77002
Phone: (713) 427-5029
Fax: (713) 427-5099
ian.shelton@bakermckenzie.com

*Attorneys for Defendants Nexo Capital Inc. and Antoni Trenchev*

**CERTIFICATE OF SERVICE**

I do herby CERTIFY that on July 31, 2026 a copy of the foregoing was served on all counsel of record via the Court's CM/ECF system.

*/s/Adrienne Harreveld*