**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Fort Lauderdale Division**

**Case No: 0:25-cv-62575-WPD**

SCOTT SCHAAF and YEIDY MONTERO,

Plaintiffs,

vs.

NEXO CAPITAL INC. and ANTONI TRENCHEV,

Defendants.
______________________________________/

**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FOURTH AMENDED COMPLAINT (DKT. 41)**

BAKER & MCKENZIE LLP
830 Brickell Plaza, Suite 3100
Miami, Florida 33131
Phone: (305) 789-8900
Fax: (305) 789-8953

By: */s/ Adrienne Harreveld*
Adrienne Harreveld, Esq.
Florida Bar No. 1035946
adrienne.harreveld@bakermckenzie.com

Ian S. Shelton, Esq.
(admitted *pro hac vice*)
Baker & McKenzie LLP
800 Capitol Street, Suite 2100
Houston, Texas 77002
Phone: (713) 427-5029
Fax: (713) 427-5099
ian.shelton@bakermckenzie.com

*Attorneys for Defendants Nexo Capital Inc. and Antoni Trenchev*

## INTRODUCTION

The Court should enforce its prior order and dismiss with prejudice the entirety of Plaintiffs' Fourth Amended Complaint ("4AC"). Dkt. 41. The 4AC does not cure the defects identified in the Court's prior dismissal order. Dkt. 36. Instead, it repackages the same claims this Court already dismissed, or simply ignores the Court's rulings and repleads the same claims. After the Court dismissed six federal claims with prejudice, Dkt. 36 at 20, Plaintiffs now attempt to resurrect them through sixteen state law claims, while still using alleged federal commodity and securities violations as the liability hook for multiple counts. That approach disregards the Court's prior order and would make a mockery of its rulings: Plaintiffs cannot evade dismissal with prejudice though new labels, artful pleading, and ignoring the Court's rulings because Plaintiffs are gambling on a better outcome in state court.

The 4AC confirms that Plaintiffs' alleged losses arise from a narrow set of March 2021 transactions and May 2021 liquidations, but it buries those facts beneath allegations about unrelated regulatory proceedings, other lawsuits, unidentified customers, and internal documents from a separate case. The result is another shotgun pleading that—after five rounds of amendments and two rounds of motion to dismiss briefing—still fail to cure the pleading deficiencies identified by the Court. *See* Dkt. 1-2 (Original State Court Complaint); Dkt. 1-10 (First Amended State Court Complaint); Dkt. 9 (Second Amended Federal Complaint); Dkt. 19 (Third Amended Federal Complaint); Dkt. 41 (Fourth Amended Federal Complaint).

The 4AC does not cure the jurisdictional defects as to Antoni Trenchev. Plaintiffs still rely on Trenchev's status as a co-founder and manager, public statements allegedly made to broad audiences, and his signature on a regulatory settlement involving Nexo. Those allegations do not establish that Trenchev personally committed suit-related conduct in Florida that gave rise to Plaintiffs' claims. Plaintiffs' control-person labels and references to Florida regulatory findings do not substitute for the individualized minimum-contacts showing required for personal jurisdiction. All three claims against Trenchev should be dismissed for lack of personal jurisdiction—Florida Misleading Advertising (Count V), Florida Civil RICO (Count XIV), and Florida Civil RICO Conspiracy (Count XV).

On the merits, Plaintiffs' claims fail for multiple independent reasons.

The declaratory and rescission counts duplicate the CEA claim the Court previously dismissed with prejudice for lack of standing and failure to state a claim. A declaratory relief claim

confers no substantive rights on Plaintiffs. Plaintiffs cannot use a declaratory relief claim to revive the CEA claim the Court previously dismissed with prejudice, or to create a private right of action under a federal law they have no standing to invoke. Plaintiffs cannot avoid the prior dismissal with prejudice by repackaging the same dismissed CEA claim as "declaratory relief" or "rescission" claims.

As to statute of limitations, Plaintiffs' accrual and relation back arguments are based on an incorrect factual premise—that Montero was named as a Plaintiff, and that Trenchev was named as a Defendant, in the Original Complaint filed in state court on May 16, 2025. Dkt. 1-2 at 12. Neither is true. Schaaf was the ***only*** Plaintiff named in the Original Complaint, and Nexo Capital Inc. was the ***only*** named corporate Defendant who is still in the case. *Id.* Montero was first added as a Plaintiff, and Trenchev was first added as a Defendant, in the First Amended Complaint ("1AC") filed in state court ***on September 6, 2025***. Dkt. 1-10 at 2. The timing of the joinder of parties has serious implications for statute of limitations.

Montero pleads that her final liquidation occurred in May 2021, and that her claims accrued no later than that date. Dkt. 41 ¶¶ 163, 408 (referencing final liquidations on May 23, 2021). However, Montero was not named as a Plaintiff until the 1AC filed on September 6, 2025, which is more than four years after May 23, 2021. Thus, 11 of her 16 claims with a statute of limitations of 4 years or less are indisputably time barred because even her final liquidations occurred more than 4 years before she sued—declaratory relief (Count I), rescission (Count II), unjust enrichment (Count III), fraudulent inducement (Count IV), misleading advertising (Count V), FDUTPA (Count VI), fraud (Count VII), fraudulent omission (Count VIII), negligent misrepresentation (Count IX), usury (Count X), conversion (Count XI), and oral or unwritten contract (Count XIII).

Similarly, Schaaf's misleading advertising claim against Trenchev is time barred because Schaaf did not name Trenchev as a Defendant until September 6, 2025—more than 4 years after Schaaf's final liquidations on May 23, 2021. Schaaf's remaining claims against Nexo with a limitations period of 4 years or less (the same claims listed above in connection with Montero) are time barred for the reasons explained in the Court's prior order—the ***only thing*** that happened during the four-year look back window was Schaaf's contractually authorized liquidations between May 19 and May 23, 2021. Because the Court previously dismissed with prejudice all state law claims based on conduct that occurred before May 15, 2021 (all of which had a 4 year limitations period), all of his new state law claims with the same limitations period are time barred for the

same reason.

That only leaves 5 claims with a 5 year limitations period: civil theft (Count XII), breach of written contract (Count XIII), and three Florida RICO claims (Counts XIV through XVI). The Florida RICO claims are time barred for the reasons explained in the Court's prior order, and also because Plaintiffs fails to plead a viable RICO enterprise, in addition to every other RICO pleading defect imaginable. Plaintiffs still fail to state a civil theft claim for the same reason explained in the Court's prior order. Finally, the breach of written contract claim fails because Plaintiffs fail to identify the relevant written contract, or explain the breach. Indeed, Plaintiffs allege that the contracts governing their Portfolio Booster and other transactions were ***not*** reduced to writing, Dkt. 41 ¶ 92, so there is no plausible claim for breach of written contract that they could pursue. But more fundamentally, Plaintiffs' entire case is premised on declaring illegal or voiding all purported contracts, whether written or oral, so any breach claim is not viable. This Court recognized in its prior order that the contractually authorized liquidations occurred pursuant to the black letter text of the Credit Terms. *See* Nexo's Crypto Credit General Terms and Conditions ("Credit Terms"), Dkt. 12-1; Dkt 36 at 15. The Court should enforce its prior Order and dismiss all claims in the 4AC with prejudice. Leave to amend is futile at this point given the multiple opportunities Plaintiffs had to cure their pleading defects. *See Klusmeier v. Bell Constructors, Inc.*, 469 F. App'x 718, 722 (11th Cir. 2012) (finding no abuse of discretion where district court denied plaintiff's request for leave to file a third amended complaint).

## FACTUAL BACKGROUND

Stripped of rhetoric, the 4AC alleges that Plaintiffs deposited digital assets on Nexo's platform, used those assets as collateral for credit transactions, elected to enter a March 2021 Help Center transaction for Mr. Schaaf and March 2021 Portfolio Booster transactions for both Plaintiffs, and then experienced forced liquidations during a market decline in May 2021. Plaintiffs allege that Nexo's platform permitted customers to borrow against digital assets, that the loan-to-value ratio changed as asset values moved, and that liquidation could occur if the ratio exceeded a threshold. 4AC ¶¶ 29–32, 55, 78–87, 101, 135–46.

The 4AC asserts 16 counts: declaratory relief, rescission, unjust enrichment, fraudulent inducement, misleading advertising, FDUTPA, fraud, fraudulent omission, negligent misrepresentation, usury, conversion, civil theft, breach of contract and implied covenant, Florida RICO, Florida RICO Conspiracy, and Florida RICO based on Unlawful Debt Collection. 4AC ¶¶

219–408. All 16 counts are asserted against Nexo, but only 3 counts are asserted against Trenchev individually—misleading advertising (Count V), Florida Civil RICO (Count XIV), and Florida Civil RICO Conspiracy (Count XV).

## ARGUMENT

### I. The Court Lacks Personal Jurisdiction Over Trenchev.

Plaintiffs again fail to establish personal jurisdiction over Trenchev. A plaintiff bears the initial burden of alleging sufficient facts to make out a prima facie case of jurisdiction over a nonresident defendant. *Posner v. Essex Ins. Co., Ltd.,* 178 F.3d 1209, 1214 (11th Cir. 1999). If the defendant raises a meritorious jurisdictional challenge through affidavits, documents, or testimony, the burden shifts back to the plaintiff to prove jurisdiction by affidavits, testimony, or documents. *Internet Solutions Corp. v. Marshall*, 557 F.3d 1293, 1295 (11th Cir. 2009). The 4AC does not satisfy that burden.

Trenchev is a director of Nexo. Trenchev Decl. (Dkt. 12-1) ¶ 2. He is a citizen of Bulgaria and resides abroad. *Id.* ¶¶ 4–5. He has no connection to Florida. *Id.* ¶¶ 8–11. He also had no knowledge of or involvement in the liquidations of Plaintiffs' collateral. *Id.* ¶¶ 14–19. Those liquidations were governed by the Credit Terms and performed by automated processes based on the market value of the cryptocurrency collateral at the time of the liquidations.

There is no general jurisdiction. For an individual, the paradigm forum for general jurisdiction is the individual's domicile. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Plaintiffs allege that Trenchev is a Bulgarian citizen and resident of the United Arab Emirates. 4AC ¶ 19. They do not allege that he is domiciled in Florida.

Nor do Plaintiffs plead specific jurisdiction. Florida's long-arm statute requires a nexus between the Florida act and the cause of action. Fla. Stat. § 48.193(1)(a). Plaintiffs' allegations about Trenchev signing an OFR settlement, holding a managerial role, supervising compliance, and making public statements do not show that he personally engaged in Florida-directed, suit-related conduct that caused Plaintiffs' alleged liquidation losses. The alleged execution of a settlement agreement with the State of Florida does not give rise to Plaintiffs' claims: Plaintiffs do not allege that the settlement agreement induced them to enter the March 2021 Help Center or Portfolio Booster transactions, governed their credit terms, caused any account credit to be issued, triggered any loan-to-value calculation, directed any May 2021 liquidation, imposed any challenged fee or markup, or caused any alleged loss. A nonresident corporate officer is not subject

to personal jurisdiction in Florida merely because of corporate status; the plaintiff must establish that the officer acted individually, for his own benefit, and thereby caused harm in the forum. *Black v. Bryant*, 905 F. Supp. 1046, 1052–53 (M.D. Fla. 1995). Vague allegations of control are insufficient. *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1318 (11th Cir. 2006).

The new allegations in the 4AC do not change the analysis. Plaintiffs allege that Trenchev is a control person under section 517.211 and that he caused misleading advertising to be disseminated. 4AC ¶¶ 25, 254, 338, 366–68. Those allegations are legal conclusions and group-pleading assertions, not facts showing that Trenchev personally directed the specific March 2021 transactions, May 2021 liquidation decisions, or alleged communications to Plaintiffs in Florida. Because Plaintiffs have not alleged a *prima facie* case of personal jurisdiction, Trenchev should be dismissed. *See Andres v. Raytheon Techs. Corp*., 2022 WL 1015489, at *2 (S.D. Fla. Apr. 5, 2022).

**II. Plaintiffs' Claims Are Time Barred By The Statute Of Limitations.**

Rule 15(c)(1)(A) incorporates state-law relation-back principles when state law supplies the limitations period. *Saxton v. ACF Indus., Inc.*, 254 F.3d 959, 965 (11th Cir. 2001). Because Plaintiffs' current claims arise under Florida law and depend on Florida statutes of limitations, Florida Rule of Civil Procedure 1.190(c) governs relation back. *Romain v. S. Cnty. Mental Health Ctr., Inc.*, 2026 WL 968058, at *4 (S.D. Fla. Mar. 23, 2026), *report and recommendation adopted,* No. 25-81626-CIV, 2026 WL 963555 (S.D. Fla. Apr. 9, 2026).

***a. Montero was not Originally a Plaintiff, so Her Claims are Time Barred.***

Montero pleads that her final liquidation occurred in May 2021, and that her claims accrued no later than that date. Dkt. 41 ¶¶ 163, 408 (referencing final liquidations on May 23, 2021). However, Montero was not named as a Plaintiff until the First Amended Complaint was filed on September 6, 2025, which is more than four years after May 23, 2021. Thus, 11 of her 16 claims with a statute of limitations of 4 years or less are time barred because she was not named as a Plaintiff until more than 4 years after her final liquidation. *See* Fla. Stat. § 95.11(3)(k) (four-year limitations period for rescission); Fla. Stat. § 95.11(3)(j) and § 95.11(3)(p) (four-year limitations period for unjust enrichment); Fla. Stat. § 95.11(3)(i) and § 95.031(2)(a) (four-year limitations period for fraud, fraudulent inducement, fraudulent omission, and negligent misrepresentation); Fla. Stat. § 95.11(3)(e), § 95.11(3)(i), and § 95.031(2)(a) (four-year limitations period for misleading advertising); Fla. Stat. § 95.11(3)(e) (four-year limitations period for FDUTPA); Fla.

Stat. § 95.11(4)(d) and § 687.04 (two-year limitations period to forfeit interest or enforce a usury penalty); Fla. Stat. § 95.11(3)(j) (four-year limitations period for recovery of money paid under an unwritten usury liability); Fla. Stat. § 95.11(3)(g) (four-year limitations period for conversion); Fla. Stat. § 95.11(3)(j) (four-year limitations period for breach of an oral or unwritten contract). Because Montero was not a named Plaintiff in the Original Complaint, relation back is inapplicable. *See Caduceus Props., LLC v. Graney*, 137 So. 3d 987 (Fla. 2014) (holding that Florida law does not permit the addition of new parties for purposes of relation back).

***b. Trenchev was Not Originally a Defendant, so the Misleading Advertising Claim against Him is Time Barred.***

Plaintiffs assert misleading advertising claims against Trenchev that are subject to a 4 year limitations period. Fla. Stat. § 95.11(3)(e), § 95.11(3)(i), and § 95.031(2)(a). This claim is facially time barred because the final liquidations occurred on May 23, 2021, but Trenchev was not named as a Defendant until the 1AC on September 6, 2025—more than four years later.

***c. Schaaf's Claims are Time Barred Based on the Court's Prior Dismissal Order.***

All of Schaaf's claims with a limitations period of four years or less are time barred—declaratory relief (Count I), rescission (Count II), unjust enrichment (Count III), fraudulent inducement (Count IV), misleading advertising (Count V), FDUTPA (Count VI), fraud (Count VII), fraudulent omission (Count VIII), negligent misrepresentation (Count IX), usury (Count X), conversion (Count XI), and oral or unwritten contract (Count XIII). In the Court's prior dismissal order, it held that two fraud claims and a FDUTPA claim were dismissed with prejudice to the extent they were premised on conduct that took place prior to May 15, 2021. Dkt. 36 at 20-21. Those three fraud claims have a 4 year limitations period. The Court could have not been clearer that the time bar precludes Plaintiffs from relying on any conduct occurring before May 15, 2021 to support their state law claims with a 4 year limitations period. Yet all of Schaaf's claims are based on conduct that occurred before May 15, 2021. The only events that Schaaf relies on are his contractually authorized liquidations between May 19 and 23, 2021. All of his claims with a limitations period of four years or less must be dismissed because none of those claims are predicated on alleged wrongful conduct that occurred after May 15, 2021. Schaaf ignores the Court's prior statute of limitations ruling and dismissal of the fraud claims with prejudice based on pre-May 15 conduct.

***d. The Florida RICO Claims are Time Barred Based on the Court's Prior Dismissal Order.***

While Plaintiffs' Florida RICO claims are subject to a 5 year statute of limitations, those claims are time barred for the same reasons the Court found Plaintiffs' federal RICO claims time barred. The Court's prior order was clear: the limitations clock begins to run "when the injury was or should have been discovered, regardless of whether or when the injury is discovered to be part of a pattern of racketeering." Dkt 36 at 11–12 (quoting *Lehman v. Lucom*, 727 F.3d 1326, 1330 (11th Cir. 2013), and *Maiz v. Virani*, 253 F.3d 641, 676 (11th Cir. 2001); *Gross v. State*, 765 So. 2d 39 (Fla. 2000) (holding that Florida state courts look to federal law for interpretation of RICO provisions).

The Court further recognized that a later predicate act restarts the limitations period only if it causes a "new and independent injury." Dkt 41 at 12 (citing *Lehman*, 727 F.3d at 1331, and *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 190 (1997)). Applying those rules, the Court held that Plaintiffs were on notice of their alleged RICO injury when Schaaf's account was liquidated in March 2020 and that the later May 2021 liquidations did not create a new and independent injury; they were additional consequences of the same alleged leveraged-transaction and liquidation theory. Dkt 36 at 12–13. Schaaf filed this action on May 16, 2025—more than five years after the March 2020 injury and outside the federal RICO limitations period the Court already applied. Florida RICO is construed consistently with federal RICO, and Plaintiffs identify no different accrual rule that would revive the same stale theory under a state-law label. *See Gross*, 765 So. 2d 42.

The 4AC does not cure this defect. It again predicates RICO on the same alleged course of conduct: undisclosed fees and markups, liquidation mechanics, alleged regulatory noncompliance, the March 2020 liquidation, the March 2021 leveraged transactions, and the May 2021 collateral liquidations. 4AC ¶¶ 335–408. Those allegations may add more labels and more alleged predicate acts, but they do not allege a new injury that is "unfamiliar, strange, or different" from the injury Plaintiffs already claimed. *Pilkington v. United Airlines*, 112 F.3d 1532, 1537–38 (11th Cir. 1997); *Lehman*, 727 F.3d at 1331–33. Later-discovered documents, internal communications, or regulatory theories do not restart limitations where the injury itself—loss of collateral through liquidation and related fees—was known when it occurred. Dkt. 36 at 12–13. Recasting that injury as Florida RICO, or adding Florida predicate labels such as securities violations, misleading advertising, theft, and usury, does not reset accrual. All Florida RICO claims should be dismissed

as time barred before reaching the other RICO defects discussed below.

**III. The Court Should Dismiss Counts I and II *Again* Because They Are The Same Federal CEA Claims Repackaged As Declaratory Relief and Rescission Claims.**

Counts I and II seek declaratory relief and rescission based on Plaintiffs' assertion that the Help Center and Portfolio Booster transactions were illegal leveraged retail commodity transactions under the CEA. 4AC ¶¶ 219–30. That theory is foreclosed by this Court's prior order. In dismissing the CEA counts, the Court held that Plaintiffs lacked standing to pursue private CEA claims because they did not fit within any category in 7 U.S.C. § 25(a)(1)(A)–(D). Dkt. 36 at 5–8. The Court rejected Plaintiffs' argument that Section 2(c)(2)(D)'s "as if" language created a private right of action, explaining that the provision expanded the CFTC's jurisdiction and enforcement authority—not private rights of action. Dkt 36 at 7. The Court also rejected Plaintiffs' reliance on Section 25(a)(1)(C)(ii) because Section 23 concerns unregulated margin accounts and leverage contracts for specified commodities such as gold, silver, and platinum, and is inapplicable to the Bitcoin transactions alleged here. Dkt 36 at 7–8. And the Court held, independently, that the CEA claims were time barred and dismissed them with prejudice. *Id*. at 8–11, 20–21.

Accordingly, these counts are barred because it is a request for a second ruling on a claim this Court already dismissed with prejudice. This Court already adjudicated that underlying CEA theory when it held that Plaintiffs lacked a private CEA cause of action and that the CEA claims were time barred, dismissing those claims with prejudice. Dkt. 36 at 5–11, 20–21. Because Counts I and II depend on the same CEA illegality theory already decided, it is barred and should be dismissed.

Furthermore, Florida's Declaratory Judgment Act does not permit Plaintiffs to bring these claims. To obtain declaratory relief under the Act, a plaintiff must claim and prove that: (1) there is a bona fide dispute between the parties; (2) the plaintiff has a justiciable question as to the existence or nonexistence of some right, status, immunity, power, or privilege, or as to some fact upon which the existence of such a claim may depend; (3) the plaintiff is in doubt as to that claim; and (4) there is a bona fide, actual, present need for the declaration. *Torres v. Shaw*, 345 So. 3d 970, 973 (Fla. 1st DCA 2022); *see also Colby v. Colby*, 120 So. 2d 797, 800 (Fla. 2d DCA 1960). The Act is not a standing catchall that authorizes declaratory relief where the plaintiff lacks a private right of action or any justiciable right to enforce the underlying legal theory. *Torres*, 345 So. 3d at 974–75. Thus, where a plaintiff lacks standing to enforce the underlying claim—because

no private right of action exists or because no justiciable right belongs to that plaintiff—a declaratory count cannot be used to circumvent that deficiency. Florida courts likewise require standing to be determined before reaching the merits of a declaratory complaint. *Alachua Cnty. v. Scharps*, 855 So. 2d 195, 198 (Fla. 1st DCA 2003). Counts I and II do exactly what the Act prohibits: they seek a declaration and rescission premised on alleged CEA violations even though this Court already held that Plaintiffs lack a private CEA cause of action and dismissed the CEA claims with prejudice. The Declaratory Judgment Act cannot revive that dismissed federal theory or supply standing that the CEA itself does not provide.

The prior order also defeats Plaintiffs' effort to rely on delayed discovery or later regulatory developments to support the declaratory claim. The Court held that Plaintiffs' CEA injuries occurred in 2020 and 2021, that Plaintiffs had access to public registration information at the time of their losses, and that even under Plaintiffs' own accrual theory Nexo had allegedly been regulated as engaging in leveraged retail commodity transactions as far back as 2022. Dkt 36 at 8–10. The Court further held that fraudulent-concealment tolling did not apply because Plaintiffs had every opportunity to file suit when the injuries occurred in 2020 and 2021, or at the latest 2022. Dkt 36 at 10–11. Plaintiffs cannot use a declaratory count filed in the 4AC to obtain a ruling on CEA illegality that would have been unavailable as a direct CEA claim.

Count II fares no better because rescission depends on the same CEA illegality theory. Plaintiffs cannot transform a dismissed and time-barred federal statutory claim into a state law equitable claim seeking the same relief. Counts I and II should therefore be dismissed.

**IV. The Court Should Dismiss The Unjust Enrichment Claim (Count III).**

Count III fails because Plaintiffs do not plead facts showing that Nexo retained a benefit under circumstances that make retention inequitable. Plaintiffs' unjust enrichment claim rests squarely on its Credit Terms agreement. Plaintiff's unjust enrichment claim states that "Plaintiffs conferred a benefit upon Nexo by pledging and depositing their valuable digital assets — Bitcoin, NEXO Tokens, and other cryptocurrency — into Nexo's custody as collateral, which Nexo then seized and liquidated for its own benefit on May 17–23, 2021, as alleged above." 4AC ¶ 234. At the outset, this claim should be dismissed because when there is a written agreement there cannot be a claim for unjust enrichment. *Fulton v. Brancato*, 189 So. 3d 967, 969 (Fla. 4th DCA 2016).

But even if there were, to state unjust enrichment under Florida law, Plaintiffs must allege that they conferred a benefit on Nexo, that Nexo knowingly accepted and retained that benefit, and

that the circumstances are such that it would be inequitable for Nexo to retain the benefit without paying its value to Plaintiffs. *Swafford v. Schweitzer*, 906 So. 2d 1194, 1195 (Fla. 4th DCA 2005). The 4AC does not satisfy the third element.

Plaintiffs' theory is inconsistent with the pleaded credit relationship. As explained in Defendants' first motion to dismiss the third amended complaint, (Defs.' Mot. to Dismiss TAC, Dkt. 22 at 9–10 & n.2; Credit Terms, Dkt. 12-1, Ex. A §§ IV.2, VI.2) the alleged transactions were governed by a credit arrangement under which Plaintiffs received account credit and collateralized borrowing capacity in exchange for repayment obligations, collateral rights, and liquidation mechanics. The 4AC itself alleges that digital assets were credited to Plaintiffs' Nexo accounts, used as collateral, and then liquidated when the loan-to-value ratio allegedly exceeded the applicable threshold during a market decline. 4AC ¶¶ 29–32, 55, 78–87, 101, 135–46. Those allegations describe the performance of a credit transaction, not a gratuitous transfer or uncompensated benefit that equity must unwind through unjust enrichment.

Florida law confirms the defect. An unjust-enrichment claim "cannot exist where payment has been made for the benefit conferred." *Murphy v. Pankauski*, 357 So. 3d 149, 152 (Fla. 4th DCA 2023) (quoting *Gene B. Glick Co. v. Sunshine Ready Concrete Co.*, 651 So. 2d 190, 190 (Fla. 4th DCA 1995)). In *Murphy*, the court affirmed dismissal because the complaint did not allege how the defendants were unjustly enriched by charges for services provided; labels such as "unjustified and valueless" were insufficient without facts showing inequitable retention. *Id.* The same is true here. Plaintiffs allege that Nexo provided the credit transactions, account credits, collateral functionality, and liquidation process they challenge, and they do not plead facts showing that Nexo retained any specific benefit for which Plaintiffs received no corresponding value. ***The liquidation proceeds were not retained by Nexo; they were used to pay off Plaintiffs' credit lines.*** Their disagreement with the transaction terms, liquidation consequences, or alleged fees does not establish unjust enrichment. Because the 4AC does not plead inequitable retention of an uncompensated benefit, Count III should be dismissed.

**V. The Court Should Dismiss The Fraudulent Inducement, Misleading Advertising, Fraud, Fraudulent Omission, and Negligent Misrepresentation Claims (Counts IV, V, VII, VIII, and IX).**

Counts IV, V, VII, VIII, and IX sound in fraud or misrepresentation and must satisfy the applicable particularity standards. Rule 9(b) requires Plaintiffs to plead the precise statements or

omissions, the time and place of each statement, the person responsible, the content and manner in which the statements misled Plaintiffs, and what Defendants obtained. *Brooks*, 116 F.3d at 1371, 1380–81. The same heightened pleading principles apply to fraud-based RICO and FDUTPA theories. *Viridis*, 155 F. Supp. 3d at 1361; *Pop v. LuliFama.com LLC*, 145 F.4th 1285, 1288 (11th Cir. 2025).

Plaintiffs do not meet that standard. Their fraudulent-inducement count identifies three categories of alleged promises: Liquidation Relief, responsiveness, and legality of the Portfolio Booster. 4AC ¶¶ 240–45. The misleading-advertising count focuses on the VIP brochure's Liquidation Relief language. 4AC ¶¶ 250–60. The fraud count focuses on a statement allegedly made by Dinca that the NEXO Token was registered with the SEC. 4AC ¶¶ 270–79. The omission and negligent-misrepresentation counts list a broad collection of alleged omissions and statements. 4AC ¶¶ 280–98. These claims are not pleaded with the required precision as to each defendant, each statement, when Plaintiffs saw or heard it, why it was false when made, how it induced a particular transaction, and how it directly caused the claimed liquidation losses.

Many alleged statements are non-actionable puffery, regulatory characterizations, legal conclusions, or generalized marketing. Allegations that Nexo was "licensed," "regulated," "trusted," or offered "some of the best rates on the market" do not plausibly plead false statements of present fact that caused Plaintiffs' losses. Plaintiffs' claims based on the Bloomberg appearance and public marketing also fail because generalized statements directed to a broad audience do not establish individualized reliance or direct causation. The pleading attempts to plead around this defect by alleging that Plaintiffs saw the Bloomberg appearance and relied on it, 4AC ¶¶ 52–54, but it still does not plausibly connect those broad statements to the later Portfolio Booster and liquidation losses, especially where Plaintiffs allege that the transaction-specific communications disclosed the added loan balances and collateral structure. 4AC ¶¶ 80–87, 94.

Plaintiffs also fail to plead proximate causation. Their losses arose when cryptocurrency values fell and Nexo liquidated collateral based on loan-to-value mechanics. 4AC ¶¶ 140–46. Plaintiffs attempt to attribute all losses to alleged omissions about fees, collateral, regulatory status, and liquidation relief, but they do not plead facts showing that any specific statement directly caused the market decline, the collateral shortfall, or the resulting liquidations. Fraud claims cannot rest on hindsight dissatisfaction with a volatile leveraged transaction after market losses materialize.

**VI. The Court Should Dismiss The FDUTPA Claim (Count VI).**

Count VI alleges FDUTPA based on the May 2021 liquidations, including the order in which assets were liquidated, alleged liquidation fees, and the asserted use of loan-to-value thresholds to which Plaintiffs say they did not agree. 4AC ¶¶ 261–69. To plead FDUTPA, a plaintiff must allege a deceptive act or unfair practice, causation, and actual damages. *Hucke v. Kubra Data Transfer Ltd., Corp.*, 160 F. Supp. 3d 1320, 1328 (S.D. Fla. 2015). Those elements do independent work. As *Rollins, Inc. v. Butland* explains, it is not enough to allege that a defendant engaged in some deceptive or unfair practice and that the plaintiff later suffered a loss. The plaintiff must allege that the challenged practice itself caused a type of actual damage recoverable under FDUTPA. 951 So. 2d 860, 869–70 (Fla. 2d DCA 2006).

First, the allegation that Nexo liquidated Plaintiffs' "most stable assets first" does not make the liquidations deceptive. 4AC ¶ 265(a). Deception requires a representation or omission likely to mislead a consumer, *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003)(citation omitted) but Plaintiffs do not allege that Nexo ever promised to liquidate more volatile assets first, to liquidate assets in any particular sequence, or to select collateral in a way designed to preserve Plaintiffs' preferred holdings. Without an alleged contrary representation, the order in which collateral was liquidated is, at most, a dispute over how Nexo administered the credit relationship. Under *Rollins*, FDUTPA does not allow a plaintiff to recover every loss associated with an unfavorable transaction; it permits recovery only for actual damages caused by the deceptive or unfair practice. 951 So. 2d at 869–70. Here, Plaintiffs' state in a conclusory fashion that the liquidation process was unfair, but do not plausibly alleged that the conduct satisfies FDUTPA.

Second, Plaintiffs' own allegations acknowledge that liquidation was tied to loan-to-value mechanics, including warnings that repayment or liquidation could be triggered when the LTV crossed the applicable threshold of 83.3%. 4AC ¶¶ 265(c), 135–46. And the prior pleadings attached the May 2021 warnings stating that, at an 83.33% LTV, the Nexo Oracle could initiate partial loan repayments automatically. Dkt. 36 at 14–15; TAC Exs. 21–23. That alleged knowledge defeats Plaintiffs' deception theory. If Plaintiffs were told that crossing the LTV threshold could trigger automatic repayments or liquidation, then the later assertion that they did not agree with how Nexo applied those mechanics does not identify a deceptive act. At most, it alleges a dispute about assent, authorization, or performance under the credit relationship (claims which are clearly

time barred).

Furthermore, the 4AC does not cure the causation deficiency the Court already identified in dismissing the prior FDUTPA claim. The Court held that, "[e]ven if the allegations properly state that Nexo deceptively misrepresented the liquidation fee, the TAC does not plead that this representation by email was the actual or proximate cause [of] Plaintiffs' damages, as above. Accordingly, this FDUPTA claim likewise fails." Dkt 36 at 17. The 4AC again recasts the same alleged liquidation-fee disclosure as a FDUTPA violation, but it still does not plead facts showing that the challenged email representation actually caused Plaintiffs' claimed losses. Plaintiffs' alleged damages stem from the market decline, their leveraged credit positions, the resulting LTV shortfall, and collateral liquidations—not from any pleaded decision they made in reliance on an email about a liquidation fee. At most, Plaintiffs allege that the fee affected the amount charged during liquidation; they do not allege that the email proximately caused the liquidation, the need for repayment, or the loss of collateral. Because FDUTPA requires actual damages caused by the deceptive act itself, the 4AC's continued failure to plead actual and proximate causation requires dismissal of Count VI.

**VII. The Court Should Dismiss The Usury and Unlawful Debt RICO Claims (Counts X and XVI).**

Counts X and XVI attempt to characterize the Portfolio Booster transactions as criminally usurious loans and then use that theory to support double-interest remedies and Florida RICO collection-of-unlawful-debt relief. 4AC ¶¶ 299–304, 396–408. The theory depends on treating alleged program charges, markups, and liquidation charges as interest and annualizing them over a short period selected by Plaintiffs. But the pleaded facts show cryptocurrency-backed credit transactions tied to collateral values and market movements, not a conventional fixed loan with a hidden usurious interest rate.

Plaintiffs' usury math makes no sense. The 4AC repeatedly characterizes the challenged amounts as a one-time "fee," "program cost," "OTC markup," or "charge," yet Plaintiffs then compare that one-time amount to interest assessed over a year as if Nexo continuously charged that same amount at that rate. 4AC ¶¶ 195–203. That is not a plausible usury theory. Plaintiffs cannot label a charge a one-time fee throughout the pleading and then annualize it as recurring interest to manufacture a usurious rate. If anything, taking Plaintiffs' flawed logic to its natural conclusion, a one-time charge would be prorated over the year rather than treated as if it recurred

throughout the year—and on that approach, the alleged charge would be reduced over the year and would not exceed, and would be less than, the stated 5.9% annual rate.

Plaintiffs' allegations also contradict themselves. They allege that no written terms governed the Portfolio Booster and Help Center transactions, no definite term existed, and the transactions were void or illusory. 4AC ¶¶ 211–18, 222–29. At the same time, they allege enforceable loan obligations with repayment requirements, interest, and collection of unlawful debts. 4AC ¶¶ 299–304, 400–05. Plaintiffs cannot simultaneously plead that the transactions were void for lack of assent and illusory terms while relying on those same transactions as enforceable loans for purposes of usury and unlawful-debt RICO relief.

The usury count further fails to plead corrupt intent beyond conclusory allegations. Plaintiffs infer intent from alleged concealment of fees, but conclusory allegations cannot transform commercial pricing disputes or liquidation charges into criminal usury. Because the unlawful-debt RICO count depends on the same usury theory, Count XVI should be dismissed as well.

**VIII. The Court Should Dismiss The Conversion And Civil Theft Claims (Counts XI and XII), And Award Nexo Attorney's Fees On The Civil Theft Claim.**

Counts XI and XII fail because Plaintiffs do not plausibly allege wrongful dominion over specific, identifiable property. Conversion and civil theft require more than allegations that Defendants charged fees, liquidated collateral, or failed to return value Plaintiffs believe they should have retained. Civil theft incorporates conversion plus felonious intent. *Omnipol, A.S. v. Multinational Defense Servs.*, LLC, 32 F.4th 1298, 1307–08 (11th Cir. 2022). Where a defendant acts pursuant to a contractual right or a disputed commercial arrangement, civil theft is not available. *Aubin v. H. Hentz & Co.*, 303 F. Supp. 1119, 1121 (S.D. Fla. 1969).

Notably, the 4AC does not cure the deficiency the Court already identified when it dismissed the prior conversion and civil-theft theories. The Court held: "In this case, Plaintiff has not alleged any obligation of Defendants to separately hold the funds deposited, such as in an escrow account or in a fiduciary capacity. And where multiple parties have access to the same account, as with the Nexo account here, a claim for conversion or civil theft does not lie." Dkt 36 at 20. The new pleading adds labels about individualized accounts and blockchain traceability, 4AC ¶¶ 307–09, 318, but those allegations do not supply the missing legal obligation. Traceability is not segregation; the ability to identify transactions on a blockchain is not the same as a duty to

hold the same property intact and return it to Plaintiffs. Florida law requires specific, identifiable property and, for fungible money or its equivalent, and *an obligation to keep the same funds intact*. *Gasparini v. Pordomingo*, 972 So. 2d 1053, 1056 (Fla. 3d DCA 2008) (emphasis added). The 4AC still alleges no escrow arrangement, trust relationship, fiduciary custody obligation, or other duty requiring Nexo to separately hold Plaintiffs' deposited assets rather than treat them as collateral subject to liquidation under the credit relationship. The pleaded theory remains that Nexo liquidated collateral and applied value to credit obligations during a market decline—not that Defendants stole an identifiable coin or fund held outside the parties' lending relationship that it had an obligation to keep intact.

That is precisely the kind of deficiency Florida courts dismiss, like this Court did previously, and Plaintiffs' amendments do not plead around it. Where multiple parties have access to, control over, or contractual rights in the same account or fund, conversion and civil theft do not lie absent an independent obligation to keep a specific fund intact. *See Rosen v. Marlin*, 486 So. 2d 623, 625 (Fla. 3d DCA 1986) (holding money was not sufficiently identifiable where it was held in a joint bank account and both parties had the right to control the funds); *Fla. Desk, Inc. v. Mitchell Int'l, Inc.*, 817 So. 2d 1059, 1061 (Fla. 5th DCA 2002) (rejecting civil-theft claim where funds were unsegregated, placed in a general operating account, and the defendant had no obligation to keep intact or hold a specific fund for delivery). Because Plaintiffs still do not allege the segregation or fiduciary-custody obligation the Court found missing, Counts XI and XII should be dismissed again.

The civil theft claim also fails for lack of felonious intent. Plaintiffs even allege that Nexo believed it was liquidating collateral to reduce outstanding obligations. 4AC ¶¶ 144–51. A disagreement over whether those liquidations were contractually authorized or whether fees were properly disclosed is not theft. *See Rosen*, 486 So.2d 625. Count XII should be dismissed, and Defendants preserve their request for attorneys' fees under section 772.11(1) because the claim lacks substantial factual and legal support. *See Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1328 (11th Cir. 2006); *Island Travel & Tours, Ltd. Co. v. MYR Indep., Inc.*, 300 So. 3d 829, 831 (Fla. 3d DCA 2020).

**IX. The Court Should Dismiss The Breach Of Contract And Implied Covenant Claim (Count XIII).**

Count XIII is pleaded in the alternative but still fails. To the extent the contract claim is based on an oral or unwritten contract, it is time barred by the Court year limitations period for the reasons explained above. Plaintiffs allege that the contracts governing the Portfolio Booster and Help Desk transactions were not reduced to writing, Dkt. 41 ¶ 92, so any unwritten contract claim based on those transactions are time barred. To the extent Plaintiffs plead breach of written contract, they fail to identify the relevant written contract, or explain the breach. This Court previously noted that Nexo was exercising its contractual rights when it executed the liquidations occurred pursuant to the black letter text of the Credit Terms. See Nexo's Crypto Credit General Terms and Conditions ("Credit Terms"), Dkt. 12-1; Dkt 36 at 15. The entire 4AC is premised on voiding or declaring illegal all purported Nexo contracts, not enforcing them, so any breach claim is contradicted by Plaintiffs' claims and inadequately pled. A breach claim cannot rest on the premise that no contract or governing term existed. The implied covenant theory fails for the same reason. The implied covenant cannot create obligations inconsistent with, or independent of, the express contract. Count XIII should be dismissed.

**X. The Court Should Dismiss The Florida RICO Claims (Counts XIV, XV, and XVI).**

Florida RICO is patterned on and construed consistently with federal RICO. 4AC ¶ 339. The Florida Supreme Court has expressly recognized that, given the similarity between the state and federal RICO statutes, Florida courts look to federal courts for guidance in construing Florida RICO provisions. *Gross*, 765 So. 2d 39. In addition to being time barred, Plaintiffs' Florida RICO claims suffer ever pleading defect imaginable.

First, Plaintiffs do not plead a distinct enterprise. A RICO enterprise must be distinct from the RICO person. *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001); *Boca Raton Community Hospital, Inc. v. Tenet Healthcare*, 502 F. Supp. 2d 1237, 1253 (S.D. Fla. 2007). Plaintiffs define the "Nexo Enterprise" as Nexo, its directors, employees, agents, related Nexo entities, founders, and NDS EOOD personnel. 4AC ¶¶ 340–48. That is Nexo and people or entities who work for Nexo allegedly performing Nexo's core business of providing cryptocurrency credit lines. A plaintiff may not plead a RICO enterprise consisting of a corporation and its agents or employees acting within the scope of their roles because a corporation necessarily acts through agents and employees. *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1357 (11th Cir. 2016). Plaintiffs'

attempt to add related entities and NDS EOOD does not cure the problem because the alleged conduct remains the ordinary operation of Nexo's own crypto-lending business. NDS EOOD is the local Bulgarian entity, and Nexo affiliate under common ownership, that employs Nexo's Bulgarian work force.

Second, Plaintiffs do not plead any predicate acts with particularity. Fraud-based RICO predicates must satisfy Rule 9(b). *Viridis*, 155 F. Supp. 3d at 1361. Plaintiffs list broad categories of mail fraud, wire fraud, securities violations, misleading advertising, theft, and usury. 4AC ¶¶ 349–68. They then excuse their failure to plead details by asserting that it would be impracticable to plead all mail and wire fraud details. 4AC ¶ 374. That is not enough. Plaintiffs must plead the who, what, when, where, and how of the alleged fraud. Their allegations remain generalized, conclusory, and improperly grouped.

Third, Plaintiffs do not plead continuity. RICO targets ongoing criminal activity, not sporadic or isolated commercial disputes. *Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1266–67 (11th Cir. 2004). The Court's prior order already recognized that Plaintiffs' RICO theory was built around the same alleged course of conduct and same type of harm—cryptocurrency purchases, alleged undisclosed fees, liquidation when market values declined, and liquidation-related charges. Dkt. 41 at 12–13. Plaintiffs' allegations about other lawsuits and other customers do not plausibly transform this two-Plaintiff liquidation dispute into a continuous pattern of racketeering. Nor do Plaintiffs plausibly allege open-ended continuity where they do not allege continuing transactions with Nexo and where the pleaded injuries arise from historical 2020 and 2021 events. *See Florida Beauty Flora Inc. v. Pro Intermodal L.L.C.*, No. 19-20929-CIV, 2020 WL 4003494, at *10 (S.D. Fla. Jul. 15, 2020) (rejecting open-ended continuity where the plaintiff failed to plead facts showing a distinct threat of ongoing or future racketeering activity or that the alleged conduct was defendants' regular way of doing business)

Fourth, Plaintiffs fail to plead RICO causation. Civil RICO requires a direct causal relationship between the alleged racketeering conduct and the plaintiff's injury; *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457, 461 (2006). The central question is whether the alleged violation led directly to Plaintiffs' injuries. *Id.* Plaintiffs' alleged injuries were caused by a decline in cryptocurrency values and resulting collateral liquidations. Their causal theory—that alleged misstatements about fees, regulatory status, liquidation relief, and token registration induced them to hold assets and enter leveraged transactions—is too attenuated. *See Ray*, 836 F.3d at 1349–50;

*Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1317 & n.12 (11th Cir. 2007).

The RICO conspiracy count fails because the underlying RICO claim fails and because Plaintiffs do not plead a non-conclusory agreement to commit predicate acts. *Rogers v. Nacchio*, 241 F. App'x 602, 609 (11th Cir. 2007). Plaintiffs allege coordinated roles and infer agreement from internal policies and corporate relationships. 4AC ¶¶ 388–95. That is not a plausible agreement to conduct an enterprise through a pattern of criminal activity.

## CONCLUSION

For the reasons discussed above, the Court should enforce its prior dismissal order, dismiss all claims in the Fourth Amended Complaint with prejudice and without leave to amend, and enter final judgment in favor of Nexo.

Respectfully submitted this 31st day of July, 2026.

BAKER & MCKENZIE LLP
830 Brickell Plaza, Suite 3100
Miami, Florida 33131
Phone: (305) 789-8900
Fax: (305) 789-8953

By: */s/ Adrienne Harreveld*
Adrienne Harreveld, Esq.
Florida Bar No. 1035946
adrienne.harreveld@bakermckenzie.com

Ian S. Shelton, Esq.
(admitted *pro hac vice*)
Baker & McKenzie LLP
800 Capitol Street, Suite 2100
Houston, Texas 77002
Phone: (713) 427-5029
Fax: (713) 427-5099
ian.shelton@bakermckenzie.com

*Attorneys for Defendants Nexo Capital Inc. and Antoni Trenchev*

**CERTFICATE OF SERVICE**

I HEREBY CERTIFY that on July 31, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: *_/s/ Adrienne Harreveld_*________
Adrienne Harreveld, Esq.